ANDREW J. ORCUTT *versus* KITTERY POINT BRIDGE CO.

In the absence of any special provisions in the charters of toll bridge corporations, there seems to be no essential difference between the obligations and liabilities resting upon such corporations and those of a town charged with the maintenance of a bridge,

Toll bridge corporations are not bound to erect and maintain railings upon their bridges for travellers to lean against or rest upon while they stop to recover from fatigue; and, if a person uses them for such purpose, he does it at his own risk.

ON EXCEPTIONS from *Nisi Prius*, APPLETON, C. J., presiding.

CASE for damages sustained in consequence of defects in a toll bridge.

When the plaintiff had introduced his testimony, the presiding Judge ruled that the action could not be maintained, and thereupon ordered a nonsuit to be entered, to which ruling the plaintiff alleged exceptions.

The facts sufficiently appear in the opinion.

*Kimball*, in support of the exceptions, contended that, —

1. The rights and liabilities of towns and toll bridge companies are not the same. The former is a statute and the latter a common law liability. When a traveller pays toll and stops upon the bridge, the company contracts with him for a safe and convenient passage, provided he exercises ordinary care. The toll is the consideration for the implied promise of safe passage, safety and convenience of the bridge. Towns receive no toll for risks assumed, but the statute fixing their liability is simply penal, requiring them to pay for damages occurring solely through their fault.

Toll bridge liability is different. Every one paying toll and conforming to the company's regulations has his person insured against injury in consequence of defects in passing over the bridge, provided he exercises ordinary care and prudence. *Farrar* v. *Greene*, 32 Maine, 574.

*Stickney* v. *Salem*, 3 Allen, 374, is not sound law; for,

according to the principles laid down there, a man is protected while moving, but when he stops from any cause the protection is withdrawn.

The presiding Judge had no authority to take this case from the jury. It should have been submitted to the jury whether the plaintiff was in the exercise of ordinary care under all the circumstances of the case. *Birge* v. *Gardiner*, 19 Conn., 507. To the point that what is defect under one state of circumstances is not under others, counsel cited *Chamberlain* v. *Enfield*, 43 N. H., 356; *Winship* v. *Enfield*, 42 N. H., 197; *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566; *Park* v. *O'Brien*, 23 Conn., 339; *Burnham* v. *Hitchcock*, 14 Conn., 361; *Weeks* v. *Conn. & R. I. Turnpike Co.*, 20 Conn., 134. The railing was a trap; prudent men would have leaned against it. *Cobb* v. *Standish*, 14 Maine, 198.

*J. A. Peters*, contra.

BARROWS, J. — Men are liable to various calamities by which they may be deprived of property, health, or even life itself. Some happen in the providence of God by what plainly appears to be inevitable accident, — others are fairly attributable to human agency, culpable or innocent. For some, which can be shown to have occurred through human artifice or negligence, without fault of the injured party contributing thereto, the law furnishes him a remedy against the guilty cause. For others, which are brought about by a combination of causes, even without fault of the person injured, he may be entirely remediless at law, although the culpable negligence of others may have contributed to produce the injury. To apportion the loss and suffering among those who aided in producing them is beyond the power and province of human justice. The attempt to do it, to which we may be incited by natural human sympathy with the suffering party, must inevitably be a failure, and is likely to result in positive injustice. To avoid adding fruitless litigation to other misfortunes, then, it is important

to adhere carefully to all well established rules and principles, by which the existence or non-existence of a legal remedy in this class of cases may be determined.

When a sufferer claims damage on account of the negligence of some other party in the performance of a duty, it becomes necessary that the limits of the duty be clearly ascertained and defined.

The defendant corporation was created in 1836, with authority to build and maintain a bridge over Spruce creek, to be constructed of durable materials, to be of a certain width, " with a railing on each side for the safety of passengers." Their powers and duties were similar to those commonly bestowed and enjoined upon such corporations. What they assumed to do when the franchise was conferred upon them was to construct the bridge in the manner above described, and to use due diligence to keep it in proper condition for the safe passage of travellers, their vehicles and goods, over it, and it is only for *negligence* in so keeping. it that they are liable. Their liability is not that of common carriers. *Grigsby* v. *Chappell*, 5 Rich. (So. Car.) They do not insure an absolutely safe transit to every wayfarer who pays his penny to pass over. Other. dangers and damages are excepted besides those arising from the act of God, the public enemy, and the fault of the traveller himself. It is for the consequences of their own negligence and want of ordinary care alone that they are responsible, should an accident occur.

In *Baxter* v. *Winooski Turnpike Co.*, 22 Vt., 114, where the charter of the company provided that they should be liable to pay " *all* damages" which should happen to any person from whom toll should be demandable, which might arise from want of repair of their road, it was held that the liability of the corporation was coëxtensive with that of towns, and, accordingly, that they were not liable for damages resulting from the plaintiff's not attempting to travel the road at particular times by reason of its general badness and insufficiency, or from not being able to travel it as ex-

peditiously and carry as large loads as he otherwise might and would have done.

And, in *Mathews* v. *same corporation*, 24 Vt., 480, it was decided that they were bound to keep their road in a state of ordinary safety for the use of travellers day and night, so far as this could be effected by ordinary diligence ; and that the same diligence is required of turnpike companies which is demanded of towns to insure the safety of travellers upon the highways.

In *Yale* v. *Hampden & Berkshire Turnpike Corp.*, 18 Pick., 357, a distinction between the legal liability of such corporations and that of towns is made, based, however, upon the language of the general turnpike Act of Massachusetts, passed in 1804, providing that such " corporation shall be liable to pay all damages which may happen to any person from whom toll is demandable, for any damages which shall arise from defect of bridges or want of repair of said turnpike road."

We had formerly in this State, a statute provision substantially similar. R. S. of 1841, c. 80, § 22. But it was omitted in the revision of 1857, and the only statute declaration of liability which we now have in such cases is that contained in § 61, c. 18, applicable alike to " the county, town or *persons* obliged by law to repair" the way or bridge.

In *Williams* v. *The Hingham & Quincy Bridge & Turnpike Corporation*, 4 Pick., 341, it was held that the remedy by action at common law, against a turnpike corporation for an injury sustained by an individual in consequence of neglect to keep the road in repair, was taken away by the statute of 1804, before referred to.

In *Commonwealth* v. *Wilkinson*, 16 Pick., 175, SHAW, C. J., declares that the only difference between a turnpike road and a common highway is that, " instead of being made at the public expense in the first instance, it is authorized and laid out by public authority and made at the expense of individuals in the first instance, and the cost of construction and maintenance is reimbursed by a toll levied by public

authority for the purpose. Every traveller has the same right to use it, paying the toll established by law, as he would have to use any other public highway."

The rights and liabilities of travellers and toll bridge proprietors respectively, seem to depend, not upon the common law principles applicable to analogous contracts, but upon statute regulations, either in the charters of the corporations or in the general laws relating to the subject. And so far as any questions arising in the case before us are concerned, there seems to be no essential difference between the obligations and liabilities resting upon the defendant corporation and those resting upon a town charged with the maintenance of a bridge.

Looking now to the plaintiff's own statement of the manner in which his misfortune occurred, it appears *that*, the captain of the company to which he belonged having called a halt upon the bridge, he leaned his back against the railing to rest and wait further orders, — *that*, when the order to fall in was given, he was "half leaning, half sitting against the railing, — *that*, "his impression was that two or three men were sitting on the railing a short time before, but no one was on it when it broke," and that, as he sprang forward to take his place in the ranks, the railing, being rotten, gave way and he fell off the bridge. It was for the safety of those who should be in the legitimate use of the bridge and its appurtenances as passengers, only, that the corporation was bound to maintain the railing. It is plain from the plaintiff's statement that he was using the railing for no such purpose and that his unauthorized use of it was the immediate cause of the accident.

BIGELOW, C. J., in *Stickney* v. *Salem*, 3 Allen, 374, remarks as follows :— "A city or town is not bound by law to erect and maintain railings for persons to sit upon or lean against. They are not intended to be used for the convenience and accommodation of those who seek for a place of rest while they stop in the highway, to lounge, or to recover

from fatigue, or to engage in conversation. If a person uses them for such purposes, he does it at his own risk."

The principle which governed that case, and must control *this*, was previously developed by our own Court in *Stinson* v. *Gardiner*, 42 Maine, 248.

Holding, as we do, that the duties and liabilities of toll bridge corporations and towns are under our laws essentially similar, in cases like the present; these cases are directly in point, and a reference to them saves the necessity of further discussion.

*Exceptions overruled. — Nonsuit confirmed.*

APPLETON, C. J., CUTTING, KENT, DICKERSON and TAP-LEY, JJ., concurred.