JENNIE LANGLOIS, APPELLANT, *v.* THE CITY OF COHOES, RESPONDENT.

*Bridge railing — giving way when leaned against — liability of the city to the party injured — statutory width of streets not applicable to a bridge.*

In an action to recover damages for injuries sustained by the plaintiff in falling from a bridge, which had been accepted as a public highway by the city of Cohoes, it appeared that on the northerly side of the bridge there was a railing against which the plaintiff leaned, whereupon it bent around to the north and the plaintiff fell into the river.

Upon the trial the court granted a nonsuit on the ground that the defendant's duty was limited to the erection of a railing which would render the bridge reasonably safe for public passage, and for such things as were incident to public passage, and that the plaintiff, in leaning against it, was putting the railing to a use for which it had not been designed.

*Held,* that the nonsuit was improper; that a man, who instead of walking across a bridge pauses for a moment and rests upon its railing, does not lose his right to protection against the negligence of the party charged with its maintenance, and that it was the duty of the city of Cohoes to maintain upon the bridge a railing sufficient to meet all those incidental uses to which it would reasonably be put by persons crossing the bridge, certainly so far as concerned their leaning against it.

It was claimed by the city of Cohoes that, by statute, the streets of the city must be sixty feet wide; that the bridge was only thirty feet in width, and that the city, consequently, had no right to accept it.

*Held,* that the statute referring to streets and highways did not embrace bridges.

APPEAL by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of Albany on the 25th day of January, 1890, after a trial at the Albany Circuit before the court and a jury, at which the plaintiff was nonsuited.

The action was brought to recover damages alleged to have resulted to the plaintiff by reason of her falling into the Mohawk river from a bridge in the city of Cohoes, the railing of which gave way when leaned against by her.

*P. D. Niver,* for the appellant.

*C. J. Buchanan,* for the respondent.

LEARNED, P. J.:

This is an action to recover damages for injury to plaintiff, caused by her falling off a bridge which crosses the south waters of the Mohawk. The plaintiff was nonsuited at the circuit and appeals.

The bridge was originally private property. On the 10th of March, 1886, the common council of the city voted that this bridge be accepted and declared open to public travel. The bridge is thirty feet wide inside, including the sidewalk, which is five feet wide. On the northerly side of the bridge there had originally been a railing of three iron pipes running through posts eight feet apart. The first pipe was a foot above the bridge, the second a foot above that, and the third a foot above the second.

In March, 1887, a freshet took away the iron post at the extreme westerly end of the bridge, together with the top rail between that post and the next. There remained two rails which, it would seem, being about sixteen feet long, passed through the first post which remained standing and into the next. The west end of the upper rail of the two which remained rested on a wooden post. The plaintiff had been accustomed to cross this bridge three or four times a day for a few years.

On the evening of March fifteenth, about seven o'clock, she was going from the city across to the island by this bridge and came to the westerly end. She there met three girls and stopped to talk. While they were talking two young men, Mort and Nolan, came from the opposite direction and joined them. After talking a little while the plaintiff sat down on the top rail near to its west end;

Maria Peat sat down next to her, Mort next and Nolan next to him. After sitting there a short time the plaintiff got up and went in front and spoke to Mort. She then turned and went back to the place she started from and put her hand on the railing. It bent around to the north and she fell into the river with all the others.

This is the account given by one witness. The plaintiff does not state that she had sat on the rail, but says that she was leaning against it with her hand upon it, and it sprang out and they all fell in. At the close of the plaintiff's case the defendant moved for a nonsuit on thirty-one grounds. The court granted the nonsuit on the ground that the defendant's duty was limited to the erection of a railing which rendered the bridge reasonably safe for public passage and for such things as are incidental to public passage, and that the plaintiff was putting it to a use for which it was not designed. The plaintiff appeals. As the plaintiff is entitled to the most favorable view, we must assume that she had not been sitting on the rail, but had been standing by it, leaning against it and resting her hand thereon. The learned justice in nonsuiting relied upon *Stickney* v. *Salem* (3 Allen, 374) with the similar cases of *Richards* v. *Enfield* (13 Gray, 344); *Orcutt* v. *Kittery Point Bridge Company* (53 Me., 500); *Stinson* v. *Gardiner* (42 id., 248); *Peck* v. *Ellsworth* (36 id., 393).

Now, in regard to the cases in those States, it is to be noticed that there the liability of towns is statutory, while with us the liability is held to arise at common law. To show the difference, we may refer to *Stinson* v. *Gardiner* (*ut supra*), holding that where children used a part of the public road for play, the town is not liable for injury sustained by defects in the road. With this we may compare *Kunz* v. *Troy* (104 N. Y., 344), where the city was held liable for injury to a child playing in the street, caused by the fall of a counter placed on the sidewalk for sale. In *McGuire* v. *Spence* (91 N. Y., 303) this difference between the law of some other States and that of our own, in respect to highways, is mentioned.

In that case a child returning from school joined others in their amusement of jumping the rope. While so engaged she fell into an open area. It was held that the fact that she was playing, instead of simply passing along the street, did not prevent a recovery. (See *McGarry* v. *Loomis*, 63 N. Y., 108.)

Now, the doctrine which holds that the same duty of a city which exists as to travelers exists also as to a child playing in the street, applies by analogy to this case. The man who, instead of walking with unresting and undeviating step across a bridge, pauses for a moment and rests against the railing, does not lose his right to protection against negligence, any more than does the child who plays in the street instead of walking sedately home.

In *Orcutt* v. *Kittery, etc* (*ut supra*) the captain of a company, to which plaintiff belonged, called a halt upon a bridge. Plaintiff leaned his back against the railing to rest and wait for further orders. As he sprang forward to take his place in the ranks, the rotten railing broke and he fell off the bridge.

It was held that it was for passengers only that the corporation was obliged to maintain the railing; and that he could not recover; that his use of the railing was unauthorized. If that is the law of this State, the nonsuit was proper. But we think that such is not our law.

The railing of the bridge should be sufficient to meet all those incidental uses to which it would reasonably be put by persons crossing. We say nothing about sitting on the rail. We speak merely of that leaning against it, which is the common act of a person stopping a moment for any purpose on the sidewalk of a bridge.

The learned justice excluded the idea of contributory negligence, and placed the nonsuit on the ground that the defendant was not liable because the plaintiff was putting the railing to an unauthorized use. We cannot agree with this view.

The defendant urges further that, by statute, the streets of the city must be sixty feet wide, and that this bridge is only thirty, and, therefore, the city had no right to accept it. Evidently the statute cited refers not to bridges, but to streets and highways, strictly so-called, because it speaks of opening, working, laying out and grading; expressions not applied to a bridge.

The defendant further urges that defendant had no right to construct or keep a bridge over this branch of the Mohawk, and would have been a trespasser in going on the bridge to make repairs. This position rests on the cases of *Carpenter* v. *Cohoes* (81 N. Y., 21) and *Veeder* v. *Little Falls* (100 id., 343). But these are quite different from this. There it was held that the city was not bound to

go upon an approach to a bridge and put a railing thereon, where the approach and the bridge were State property.

Now, in this case, Adams built this bridge in 1876 from an island owned by him to vacant land on the west side of the south branch of the Mohawk. He sold building lots on his island, and houses were built thereon. People used the bridge in crossing from his island to the other part of the city.

The bridge was within the city limits. In 1886, as above stated, the common council passed a vote accepting this bridge and declaring it open to public travel. After the freshet of 1887, above mentioned, the street superintendent repaired the bridge, putting in new floor timbers. His attention was then called to this defective railing.

Whether the State might not cause this bridge to be removed we need not say. It had been allowed to remain some twelve years, and had been used by the public during that time. The case comes within that of *Sewell* v. *Cohoes* (75 N. Y., 45).

The judgment should be reversed and new trial granted, costs to abide the event.

LANDON and MAYHAM, JJ., concurred.

Judgment reversed, new trial granted, costs to abide event.