ECKERT v. TOWN OF SHAWANGUNK.

(Supreme Court, Appellate Division, Third Department. December 9, 1902.)

1. HIGHWAYS—DEFECTIVE BARRIERS—DEATH OF CHILD—DUTY OF TOWN—NEGLIGENCE.

    The body of intestate, a boy of eight, was found in a mill pond; and near the place a highway ran along the edge of the pond, which descended precipitously to the water. At the edge of the bank, defendant had erected a barrier, which had become rotten, and, near the point where the body was found, was broken down. The boy had been in the habit of fishing in the pond, and was venturesome, but on the day when he left home he stated that he was going to pick strawberries; and there was no proof as to how the barrier was broken, or how he fell into the pond. *Held*, that the evidence was insufficient to establish that he fell in while walking along the highway, by reason of the insufficiency of the barrier, and hence the town was not liable.

Appeal from trial term.

Action by Norman Eckert, as administrator of the estate of Charles Eckert, deceased, against the town of Shawangunk. From a judg-

ment in favor of plaintiff, and from an order denying a new trial, defendant appeals.   Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

Everett Fowler, for appellant.

A. S. Embler, for respondent.

KELLOGG, J.   The complaint charges that the defendant's commissioner of highways was negligent in not maintaining in proper repair a barrier on a public highway bordering on a dangerous embankment, and in suffering the barrier to become rotten and unsafe. It alleges that plaintiff's intestate, a boy eight years old, "while walking along said highway at the point or place where it passes over said dam or embankment, without fault or negligence on his part, but solely owing to defendant's negligence as aforesaid, was precipitated and fell into said pond * * * by the breaking and giving away of the said barrier, * * * and was drowned."

The facts as developed on the trial were briefly these:

The highway was about 18 feet wide, when for some distance it ran along an embankment, on one side of which was a mill pond. From the edge of the road the land sloped to the water at an angle of about 45°, and was covered with brush and weeds.   The distance down this slope from the edge of the highway to the water at the time of the accident was about 7 feet.   With care, a person could walk down and up the slope with reasonable safety.   On the edge of the embankment, between the highway and the pond, was a barrier or a single rail about 2½ feet above the ground.   The rail was 4 inches square, set upon posts about 8 feet apart.   The highway at this place had been maintained in this condition for 40 years or more, and no accident had ever happened.   At the time of the accident the railing and posts were old and decayed, and retained little resisting power.   The commissioner knew, or ought to have known, their condition.   The plaintiff's intestate was his son, a boy 8½ years old at the time of the accident, intelligent, and familiar with this road and the pond; living near the pond, some 600 feet away from the place where the accident occurred; was accustomed to go alone to fish in the pond from its banks.   His father says:

"He acted like a little man,—like an older man.   He would be fishing at times; would go out fishing by himself; got his rod and line."

He seems, also, to have been venturesome.   A witness says:

"I know where there is a bulkhead there extending out on the north side of the pond on this bank.   I have seen the boy on that bulkhead. * * * The bulkhead extends out in the pond, as near as I can tell, about twelve feet, and, I should judge, was about three feet wide.   I spoke to the boy and told him to get off of it. * * * I told him to get off the bulkhead and to go home. * * * I think this was the year before June, 1901."

In June, 1901, at 6 o'clock in the afternoon, the boy started to go along this road, telling his mother that he was going to pick strawberries.   This was the last seen of him.   Within 15 or 20 minutes after leaving home a neighbor called and said that the boy's hat was floating in the pond a few feet from this embankment; and

within a short time his body was recovered in 12 or 15 feet of water, some 15 feet from the embankment where it touches the water. The railing or barrier at this point was broken down, and, though the evidence was conflicting, the jury might properly have found that the railing was up just before the accident. Several witnesses saw a small dead fish floating close to the shore, opposite the place where the railing had fallen. One of plaintiff's witnesses says:

"I saw a dead fish. It laid up against the shore,—between the hat and the shore. It was a small fish, that looked like it had been there quite a while. * * * I wouldn't want to say whether the fish was in such a position that a person passing on the highway could see it from the roadway. I saw it as I stepped off the highway, down towards the water's edge."

From the evidence, I think a jury might properly find that in some way the barrier was broken down by the boy, and its giving away precipitated the boy into the water. It is wholly problematical whether the boy saw the fish at all, and, if he did, whether he was seeking to possess himself of it,—whether for that purpose he sought to get over the railing, or under it, using it for a support in gaining a foothold in the embankment, and it broke down, or whether he was leaning against the railing when it broke down. Judging from what we know of the natural curiosity and propensity of boys of that age, with this boy's experience, it is not difficult to reach a conclusion, in the absence of all other proof, that if, in fact, the boy saw the fish, he was trying to get possession of it when he fell into the water; that he was trying to get through or over the barrier in order to go down the bank to the water, which was only seven feet from the edge of the highway. In the absence of all proof as to how the barrier came to be broken down, the circumstances surrounding this accident leave room only for speculation. If the boy was in fact seeking to get through or over this railing for any purpose, he did not meet his accident "while walking along said highway." The theory urged by counsel, that the boy was leaning against the railing, watching the fish, has no evidence to support it; and the theory is not so reasonable as that the boy coveted the fish, and was attempting to possess it, and in some way was trying to surmount the railing when it broke down.

In support of the right of the boy to lean against the railing, counsel for plaintiff cites the case of Langlois v. City of Cohoes, 58 Hun, 226, 11 N. Y. Supp. 908. Learned, P. J., said:

"The railing of the bridge should be sufficient to meet all those incidental uses to which it would reasonably be put by persons crossing. We say nothing about sitting on the rail. We speak merely of that leaning against it which is the common act of a person stopping a moment for any purpose on the sidewalk of a bridge."

The "incidental uses" to which this railing of this embankment would reasonably be put does not include sitting upon it, or climbing over it, or getting through it for any purpose.

I do not see that it makes any difference in such a case whether the boy was or was not sui juris. If non sui juris, it still remains a question as to whether the defendant was negligent in not apprehending that any infant might, on this remote highway, try to get on, over,

or through this barrier. I do not think the commissioner of highways of towns, under such conditions, is bound to apprehend or provide against such a remote contingency. If it can be said that the boy had a right to lean against the railing, and the proof were that he did lean against it, which caused it to break down, a difficult case would be presented. But the field is entirely one for speculation, and when there are two possible causes of the accident, one of which imputes negligence to the commisioner, and one does not, the jury has no right to choose. It is mere speculation, and a verdict in such a case cannot be supported by the evidence. Upon the complaint in this case, and the evidence given to support the alleged cause of action, I think the motion for nonsuit should have prevailed.

The judgment is reversed, and a new trial granted, with costs to appellant to abide the event. All concur.