## DISTRICT OF COLUMBIA *v.* WASHINGTON.

---

MUNICIPAL CORPORATIONS; STREETS AND HIGHWAYS; NEGLIGENCE; INSTRUC-TIONS TO JURY; EVIDENCE.

· 1. It is the duty of a municipality to erect and maintain a railing or other guard along a steep embankment beside a public road, where

---

Note.—On the liability of municipality for defects or obstructions in street, see comprehensive note in 20 L.R.A. (N.S.) 516.

the lack of reasonable protection at such place renders the traveled way unsafe and out of repair.

2. Where in an action against the District of Columbia to recover damages for the death of the plaintiff's intestate, resulting from his fall over a steep embankment along a public road, caused by the breaking of a two-rail fence along the embankment, the evidence is conflicting as to what caused the fence to give way,—whether the intestate, who weighed 250 pounds, fell or ran against it, or whether he sat on the bottom rail,—it is error for the trial court to refuse an instruction asked by the defendant to the effect that if the intestate was sitting upon the rail of the fence when he fell, he was making an unnecessary and unusual use of it, not in accordance with the purpose of its construction, and the defendant would not be liable, and to merely instruct the jury that it was for them to say whether the intestate at the time of the accident, regardless of the position he was in, exercised due care and caution.

3. A death certificate is inadmissible in evidence to show what caused the death of the intestate, in an action to recover damages for the negligent killing of the intestate, and cannot be made evidence indirectly by having the coroner identify it and then requiring him to state what reason he assigned as the cause of the death.

No. 2818.  Submitted October 15, 1915.  Decided November 1, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the defendant's negligence.                                              *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment in the supreme court of the District upon a verdict for the plaintiff, P. Dallas Washington, administrator of the estate of Daniel Turner, appellee here, in an action for damages growing out of the death of appellee's intestate by the breaking away of a guard rail along an embankment.

According to the evidence for the plaintiff, there is a large fill on the west side of Nicholls avenue in Anacostia in this District, north of the foot of the hill leading to St. Elizabeth's asylum. Owing to this fill there is an embankment on that side some 25 or 30 feet high, along which there is a dirt walk. The

District has maintained along this embankment a plank railing consisting of an upper and lower plank several inches apart. Upon the occasion in question, plaintiff's intestate, Daniel Turner, a man about seventy years old and weighing 250 pounds, was walking along by the side of this railing, and turned around to speak to a man who was driving along the street. Thereupon, according to one witness, Turner "fell against the fence," and, according to another witness, "ran up against the fence," when one end of the rail broke away from the post to which it had been nailed, and he was precipitated to the bottom of the embankment. There was other evidence tending to show that as the result of this fall Turner died; and also evidence tending to show that the railing was improperly constructed, and that for a considerable length of time it had been out of repair. In his amended declaration, plaintiff alleged that his intestate, "who was standing on said Nicholls avenue and whose body came in contact with a portion of said fence, or who leaned against a portion of said fence," was precipitated down the embankment, etc.

The evidence for the defendant tended to show that plaintiff's intestate accosted the man who was driving along, who thereupon alighted from his vehicle, and the two engaged in conversation. Plaintiff's intestate sat on the bottom rail of the fence, one end of which, after two or three minutes, dropped down by reason of the nails in that end pulling out, and he was precipitated down the embankment.

At the close of all the evidence, the defendant requested the court to instruct the jury that, if they believed from the evidence that plaintiff's intestate at the time of the accident was sitting upon a rail of the fence, he was making an unnecessary and unusual use of it, not in accordance with the purpose of its construction, so that the defendant would not be liable. This instruction the court refused to give, and the defendant excepted. Under the instruction as given the court left it to the jury to say whether plaintiff's intestate, at the time of the accident, regardless of the particular position he was in, exercised due care and caution.

*Mr. Conrad H. Syme,* Corporation Counsel, and *Mr. Roger J. Whiteford,* Assistant, for the appellant.

*Mr. Wilton J. Lambert* and *Mr. Rudolph H. Yeatman* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The duty of the District to erect and maintain a railing or other guard along the embankment in question is not denied, nor could it well be, since the lack of reasonable protection at such a place renders the traveled way itself unsafe and out of repair. *Drew* v. *Sutton,* 55 Vt. 586, 45 Am. Rep. 644; *Davis* v. *Hill,* 41 N. H. 329; *Roth* v. *Highway Commission,* 115 Md. 469, 476, 80 Atl. 1031. But it is contended, on behalf of the District, that the purpose of such a guard is merely to indicate to a traveler where he may go, and that if he puts the barrier to a use other than that for which it primarily was intended, he assumes responsibility for his act. In Massachusetts and Maine, where liability depends upon statute, it has been ruled that there can be no recovery where a traveler, without necessity, leans against a railing, even though it be defective. *Stickney* v. *Salem,* 3 Allen, 374; *Stinson* v. *Gardiner,* 42 Me. 248, 66 Am. Dec. 281. In the former case the court said: "The legal obligation of keeping a sufficient railing upon the highway is imposed only when it is necessary to mark the limits of that part of the road within which persons may safely travel, or to furnish a guard against dangerous places so that proper protection may be afforded to those who, in the exercise of due care as travelers while passing or standing on the way, might otherwise be exposed to accident or injury." The court further said: "If a person, without fault or negligence on his part, is forced against a railing, or takes hold of it to aid his passage, or falls against it by accident, or has occasion to use it in any way in furtherance of a lawful or reasonable exercise of his rights as a traveler, and by reason of any defect or insufficiency it gives way and causes injury, a town or city would be liable to make full compensation for the damages thereby occasioned."

In *Langlois* v. *Cohoes,* 58 Hun, 226, 11 N. Y. Supp. 908, the court directed attention to the fact that in New York liability had been held to arise at common law, and that the doctrine of the Massachusetts and Maine cases upon the subject would not be applied. The court said: "The railing of the bridge should be sufficient to meet all of those incidental uses to which it would reasonably be put by persons crossing. We say nothing about sitting on the rail. We speak merely of that leaning against it which is the common act of a person stopping a moment for any purpose on the sidewalk of a bridge." To the same effect was the ruling in *Jackson* v. *Boone,* 93 Ga. 662, 20 S. E. 46.

The embankment in the present case bordered a much traveled public way in a thickly populated section. We think, therefore, that under the facts it constituted such a dangerous place that something more than a mere muniment was required for the protection of pedestrians. This duty the District authorities evidently understood and appreciated, for the railing at this place was of such a character as to furnish a substantial guard, if in proper repair or condition. We think it clear that such a guard should be reasonably sufficient to protect all travelers who are making a legitimate and proper use of the street. Surely a person is making such use of the street if, without his fault, he falls or is thrown or crowded against the railing as he is attempting to pass along. Such occurrences are reasonably to be expected, and therefore should be provided against. If the railing must be of such a character as to protect a traveler under the conditions just mentioned, surely it ought not to be said, as matter of law, that a mere casual leaning against the railing would be such an unusual or careless act as to preclude recovery where the railing gave way by reason of its defective condition. The traveler has a right to assume, in the absence of any indication to the contrary, that the railing is sufficient for the purpose for which it was designed; and we think it well may be held a question for the jury whether a mere leaning against such a railing, as the traveler pauses in his walk, constitutes such an unreasonable use of the same as to preclude his right to recover. The strain upon the railing under such conditions

would not be unusual. If the railing should be sufficiently strong to protect a traveler who falls or is crowded against it, surely it ought to be sufficiently strong to withstand the same kind of a strain when exerted by a traveler who casually leans against it.

But we do not think that the use of such a railing as a seat is one of the incidental uses to which it reasonably may be put by travelers. Such a use is not to be anticipated, and hence not to be guarded against. In the present case neither the posts to which the rail was nailed, nor the rail itself, gave way. The accident was occasioned by the wrenching of the rail from its support. In what way the force was exerted that caused the rail thus to be wrenched from its support is, of course, a question for the jury; but the District was not required either to construct or to maintain a railing that would resist such an unusual and unnecessary strain as would be likely to come from using the rail as a seat, and particularly is that so in the present case because of the unusual weight of the intestate. It follows that it was error for the court to refuse the instruction requested.

The coroner of the District was called as a witness in its behalf. He testified that the death certificate issued at the time of the intestate's demise was in his handwriting, and he then was asked "what reason *was assigned* by him as the cause of the death." The court sustained plaintiff's objection to this question, and the ruling here is assigned as error. The question then at issue was, What *occasioned* the death? The death certificate was not evidence, and it could not be made evidence indirectly. The witness properly might have been asked to state his means of knowledge, and then his opinion as to the cause of death. But that was not done.

The judgment must be reversed, and the cause remanded for a new trial.                            *Reversed and remanded.*