## COUNTY COMMISSIONERS OF WORCESTER COUNTY *vs.* MARY A. RYCKMAN.

*Negligence—Bridge Over County Road Without Guard Rail—Contributory Negligence—Sufficiency of Evidence to Support Rejected Prayer.*

While driving across a bridge on a county road the wheel of plaintiff's vehicle went over one side, where there was no guard rail, and plaintiff was thrown out and injured. In an action to recover damages, *Held*, that it is for the jury to determine whether the absence of the guard rail was evidence of negligence by the defendant and the cause of the injury, and the width of the bridge should be considered as reflecting upon that question. Consequently, a prayer instructing the jury that if the bridge was reasonably safe the plaintiff is not entitled to recover, although the bridge was narrower than the road, was properly rejected.

When a prayer is rejected by the trial Court the question of the sufficiency of the evidence to support it is open to review on appeal, although that objection does not appear to have been made to the prayer at the trial below.

Appeal from the Circuit Court for Wicomico County (HOLLAND and LLOYD, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William F. Johnson* and *Robert P. Graham* (with whom were *Toadvin & Bell* and *C. J. Purnell* on the brief), for the appellants.

*James E. Ellegood* and *Joshua W. Miles* (with whom was *H. L. D. Stanford* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant to recover damages alleged to have been sustained by her by reason of the appellant not keeping a county road and bridge under its control in a safe and proper condition. She obtained a judgment for one thousand dollars, and the only questions for our consideration are those presented by the ruling of the Court in granting the plaintiff's fourth and in rejecting the defendant's second and fourth prayers. The negligence of the defendant relied on by the plaintiff was its failure to keep a guard rail on the left or west side of the bridge. The plaintiff was the only witness who was present at the time of the accident. She testified that she lived on the road leading from Pocomoke City to Snow Hill, about a fourth of a mile from the residence of Daniel Pusey. On the third day of November, 1898, about four o'clock in the afternoon, she left her home, crossed the bridge, which was between her residence and that of Pusey, and remained at Pusey's about half an hour. She was driving one horse in a carriage with the top down. On her way home she drove on the bridge, " felt the carriage going down and grabbed

at the seat and dasher, and then fell over the seat into the water, which was not very deep ; that the back wheel fell over and when the accident happened horse was walking quietly over the bridge." She returned to Pusey's and he, his wife and son, went to the place of the accident. Those three witnesses said they found that the left front wheel of the carriage was off the bridge, one shaft was broken, and the horse was standing on the bridge. The testimony on the part of the plaintiff showed that there was a rail on the right side of the bridge and there had been one on the left side, but it had been off for some time prior to the accident. Her testimony also tended to show that the bridge was unsafe, while that on the part of the defendant was to the effect that it was safe. Daniel Pusey, Jr., a boy fourteen years of age, said that the rein on the right side of the horse was loose at the bit when he went to hold the horse's head, while it was on the bridge. The plaintiff was apparently mistaken in saying that the back wheel fell over, as the other three witnesses said it was the left front wheel, and they were more likely to be accurate as to that than the plaintiff, who was doubtless more occupied in trying to pro-tect herself from injury than in observing which wheel was off the bridge. The bridge, according to the testimony o one of the witnesses, was twelve feet four inches wide between the rails. The defendant's witnesses testified that it was by actual measurement wider than the road. There were trees about the bridge which made it somewhat dark at night. It must have been getting dark when the acci-dent happened, as Mrs. Pusey said she lit her lamp when the plaintiff left her house.

The only objection urged in this Court to the plaintiff's fourth prayer is that there was no evidence that she was " guilty of negligence *remotely contributing* to the cause of the accident," which is left to the jury to find, as the only facts that tended to establish negligence on her part con-tributing to the accident showed that it was *directly* and not *remotely* the cause of the accident. A conclusive answer

to that objection is that it does not appear to have been made in the lower Court.     In one of the rules of this Court, which is now section 9 of Art. 5 of the Code, it is provided that no question shall "arise in the Court of Appeals as to the insufficiency of evidence to support any instruction actually granted, unless it appear that such question was distinctly made to and decided by the Court below."     The record does not show that such objection was made in the Court below and therefore we cannot entertain it.

But if that rule had been complied with it would have been of no avail, as we find no evidence that required the Court to submit the question of the contributory negligence of the plaintiff to the jury.     All that we find (and the appellant's brief states that there was no other) which is claimed to impute negligence to the plaintiff, is that she crossed over the bridge about a half hour before the accident, lived near it, and hence, it is said, ought to have known its condition, and the further fact that young Pusey testified that "the rein on the right side of the horse was loose at the bit."     Those facts of themselves were not evidence of negligence, either directly or remotely contributing to the accident, and hence there was no necessity for the plaintiff to submit that question to the jury.     The unsafe condition of the bridge relied on as causing the accident was the failure to keep the guard rail on it.     There is no evidence that the plaintiff knew it was off and it is possible for her to have driven over the bridge without seeing that it was, but if she had seen it and did know that fact it was not negligence on her part to again use the bridge, which she had safely driven over a half hour before, simply because one of the rails was off.     There may be, and doubtless are, many bridges on county roads on which there are no guard rails, although there probably ought to be on some of them for the safety of those traveling over them, but it cannot be said that persons using them are guilty of contributory negligence simply because they knew that they were not thus protected.     *Broadwater's case*, 69 Md. 533, is to the con-

trary.    Nor is there a particle of evidence to show when or how the rein became loose.    It is perfectly possible, and altogether probable, that it was when the accident happened, but however that may be, the testimony does not show that the plaintiff knew or had any cause to suspect that it was loose before going on the bridge, if it was.    If the accident was occasioned by the defendant's negligence in not keeping up a rail, which would probably have prevented the carriage wheel from going off the bridge, surely the mere fact that the rein was found to be loose after the accident, without any explanation as to how or when it became so, cannot be used as in anywise tending to show contributory negligence on the part of the plaintiff, especially in the absence of all proof that she was aware that it was loose. Juries must reach their conclusions from facts submitted to them, and legitimate interferences to be drawn from such facts, but they should not be permitted to base their verdicts on mere speculation and possibilities not founded on some evidence legally sufficient to sustain a verdict.    So without meaning to approve of the form of this prayer, if it had been necessary to submit that question, we think there was no legally sufficient evidence of such negligence and hence it was wholly unnecessary to submit it.    If there had been, the prayer would not have been entirely free from the objection that it was calculated to mislead the jury.

The defendant by its second prayer asked the Court to instruct the jury " that if they shall find from the evidence that the public road and bridge where the plaintiff is alleged to have been injured was then in such condition as to be reasonably safe for persons traveling with ordinary care with wagon or carriage, then the plaintiff is not entitled to recover, even though they may find that the bridge in question does not extend across the whole width of the road." Its first prayer, which was conceded, was similar to that, excepting the concluding clause as to the width of the road was therein omitted.    It may be conceded that the mere fact that a bridge is not as wide as the public road approach-

ing it is not of itself necessarily evidence of negligence, but if it be so much narrower as to likely cause persons traveling over the road to drive off the bridge, unless the approaches to it and the sides are protected, that would be a fact proper to be considered by the jury in determining whether the road and bridge were in a safe condition.  A bridge might be perfectly safe without guard rails, if it be sufficiently wide, and it might be safe with guard rails, although narrower than the road approaching it, but in determining whether this bridge was reasonably safe it was the duty of the jury to consider all the facts reflecting upon that question.  Therefore if the Court had added to its instruction, which it had already given, what the defendant asked it to do by this prayer, it might have had the effect of eliminating from the consideration of the jury the width of the road in connection with the absence of the rail, which ought to have been considered by them.  It is sometimes proper to instruct the jury as to some particular fact or facts in evidence, but it is generally a very dangerous practice to emphasize any special item of evidence which the jury is to consider in connection with other testimony, for, as was said in *Moore* v. *McDonald*, 68 Md. 335: "Such instructions coming from the Court are apt to give undue weight and prominence to the fact thus called to their attention.  It is a practice liable to abuse and to mislead.  When the jury was called upon to determine whether the absence of the guard rail was evidence of negligence by the defendant and the cause of the accident, it should have taken into consideration the width of the bridge, as reflecting upon that question, and to have granted this prayer might have led them to believe that was entirely outside of the facts to be considered by them and that they must determine whether the bridge was reasonably safe irrespective of its width, which under the circumstances would not have been proper. The prayer was therefore misleading and properly rejected.

After what we have said in passing on the instruction granted at the instance of the plaintiff, it is unnecessary to

discuss at length the fourth prayer of the defendant.    It was based on the alleged contributory negligence of the plaintiff. Having determined that there was no evidence legally sufficient to· justify the Court in submitting that to the jury, it follows that this prayer was properly rejected.    As section 9 of Art. 5 of the Code above referred to only applies to instructions *actually granted*, the insufficiency of the evidence in a prayer *which is rejected* is not affected by that rule and must be considered by this Court.    The judgment must be affirmed.

> *Judgment affirmed, costs to be paid*
> *by the appellant.*

(Decided March 23rd, 1900.)