## META ROTH *vs.* HIGHWAYS COMMISSION OF BALTIMORE COUNTY.

*County Commissioners and Highways Commissioners; Baltimore county; duties of; Acts of 1910, Ch. 685, 1904, Ch. 465; roads; dangerous embankment; absence of fence or guard. Contributory negligence; question for jury; prayers.*

The mere failure of County Commissioners to erect guard rails or fences on the county roads does not constitute negligence.                                              p. 475

It is for the jury to determine from all the circumstances of the case whether it was negligence on the part of the County Commissioners not to erect, on a much-used road, near a city, a fence or guard rail, at the end of a culvert with a steep embankment adjoining, and not to keep the locality free from bushes and vines so as to let the danger be seen.        p. 476

It is the duty of the County Commissioners to keep the roads of the county in proper condition and repair and reasonably safe for travel.                                     p. 476

Where a steep embankment at the edge of a road adjoining a culvert is hidden by bushes and vines, it is not contributory negligence as a matter of law for a party, in making room for another vehicle to pass, to drive too near the edge of the road, unless she knew the unprotected culvert and embankment was there, or that there was danger of her wagon sliding off over the embankment.                    · p. 478

Unless an act relied upon to constitute contributory negligence is distinct, prominent, decisive and one about which ordinary minds would not differ in declaring to be negligent, the question is one for the jury to determine from all the circumstances of the particular case.                    p. 479

The Acts of 1900, Ch. 685, 1904, Ch. 465 and 1910, Ch. 495, relating to the Highways Commission of Baltimore County, construed.                                     p. 471

*Decided April 5th, 1911.*

Appeal from the Circuit Court of Howard County (THOMAS, C. J., FORSYTHE, JR. and BRASHEARS, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, PATTISON and URNER, JJ.

*Edward M. Hammond* (with whom was *Charles F. Harley* on the brief) for the appellant.

*James J. Lindsay* (with whom was *John S. Biddison* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is a suit against the Highways Commission of Baltimore county by the appellant for injuries sustained by her by reason of the alleged neglect on the part of the defendant to properly protect the end of a culvert running under one

of the public highways of the county. Under Chapter 465 of the Acts of 1904, as amended by the Acts of 1908, Chapter 495, the appellee has general charge and control over all the public highways, roads, bridges, streets and alleys of Baltimore county, and it is made the duty of the commission to keep them in proper condition of repair and reasonably safe for public travel. The county commissioners constitute the commission, by which name the statute provides they may sue and be sued in all matters pertaining to the highways and bridges over which they are given control and there is conferred upon the commission all the powers with respect to the public highways of the county theretofore vested in the county commissioners, or other officers charged with their proper maintenance. It is provided that: "For any negligence or breach of the duties imposed by this subtitle, said commission shall be liable in damages at the suit of the person or persons insured thereby, but it shall be subject to no other or greater liability in the premises than was the board of county commissioners of Baltimore county in matters relating to the roads and bridges of the county before the passage of the Act" of 1900, Chapter 685, and that any final decree or judgment obtained against said Highways Commission in any such suit or action, or costs adjudged against it, shall be satisfied and paid in due course by the county commissioners of said county out of the proper funds for such purpose.

At the conclusion of the testimony offered on behalf of the plaintiff, the Court granted the following prayer: "Under the pleadings in this case, no evidence has been offered legally sufficient to entitle the plaintiff to recover in this case; and the verdict of the jury must, therefore, be for the defendant". A verdict was accordingly rendered for the defendant, and this appeal was taken from the judgment entered thereon. The ruling on that prayer constitutes the only exception presented by the record.

No objection to the declaration has been urged before us, and the case went to trial on the general issue. So although

the prayer referred to the pleadings, it will be unnecessary for us to speak of them beyond saying that the declaration is sufficient, and a recovery can not be denied by reason of anything in it or omitted from it. Although the prayer does not distinctly present the question of contributory negligence, the argument was addressed to that as well as to the alleged negligence of the defendant and we will consider the case from both standpoints.

The plaintiff (appellant), in going from the City of Baltimore to her home, was driving one horse hitched to a wagon, on a public highway in Baltimore county known as Cook's lane, which connects Edmondson avenue with St. Agnes lane. Just before she reached the latter, an automobile containing three ladies and a chauffeur turned into Cook's lane. and the chauffeur stopped the automobile on his right side of the road to inquire of the plaintiff whether that was the road leading to Edmondson avenue. The plaintiff stopped her horse on her right of the road, and the record reports the chauffeur as giving this account of what then occurred: "That his machine was standing still. The horse came within 15 or 20 feet from the front of his machine and stopped there, and in trying to start, the horse and wagon went down off the road. They just slid off. The horse was very quiet and did not shy. Witness was on his right side of the road, and Mrs. Roth was on her right side of the road." On cross-examination he also said that he went "as far to his side of the road as he could before stopping the machine, and he didn't pay much attention to the lady; but he did not stop his engine, and that there was plenty of room for a wagon to pass him on his left. The horse was standing quite still, and his machine was making no noise * * *. He waited for her to drive on. The horse did not rear or plunge, and he supposes that she pulled as far to her right of the road as he did but could not say exactly, and after she gave the information she went over the embankment." · One of the ladies in describing the relative positions of the automobile and the wagon, in answer to the question whether another team could

have passed between them said, that "we were on the bias," and a team would have had to pull in front of the automobile—meaning as we understand her testimony that the two vehicles were not opposite each other, but another team could have passed to their left, and then have gone in front of the automobile and have passed the wagon. At the point where the accident occurred, there is a culvert running under the road, which was twenty-six feet from end to end. It is on the surface about level with the road, and on the side where the plaintiff was injured, there is an embankment or abutment eight or ten feet high. The plaintiff, the horse and the wagon went over that embankment, down into the ditch or stream below. The witnesses who went to her assistance described her as being at the bottom in the water, with the wagon on top of her and the horse on top of the wagon. The chauffeur and some men who were called by the ladies got the horse and wagon off her, and released her from the position she was in. She was taken to her home in the automobile, and she was undoubtedly very seriously injured. One of the ladies in the automobile was asked on cross-examination: "Q. After getting through talking, did you thank her (meaning Mrs. Roth) for the information? A. We did not have time. Q. She told the horse to get up? A. Yes, sir; and then went down. Q. Wagon went first? A. Yes, sir." The plaintiff testified: "I went to town and was coming home. I met an automobile and they asked me where the road led. I wanted to tell them, but I felt that the back wheel was slipping and that I was going. Then I don't know nothing." Again she said, in answer to which wheel it was, "The back one on the right hand side," and when asked, "What happened then," said, "I felt that I was going down as the wheel, was slipping. Then I do not know any more."

It was shown that there was no fence, guardrail, or anything at the end of the culvert, above the ditch into which the plaintiff fell except some vines and bushes which had grown over the end of the culvert and down the side. There

is some difference of opinion between the witnesses as to the
width of the traveled portion of the road, and as to how far
the vines, bushes, etc., extended from the end of the culvert
towards the road, although they very generally agree that the
whole width from one end of the culvert to the other was
twenty-six feet.   They concur in the statement that there
were vines, bushes, grass and foliage, as some of them speak
of it, between the traveled part of the road and the end of the
culvert over the steep ditch, and they show that they were
high enough to prevent anyone on the road from seeing the
end of the culvert, or the ditch beyond it.   One witness said
that there was about twenty feet of macadamized road "to
where it slopes" and that the bushes grow about two or three
feet on the culvert, and then down on the side; another said
that he thought that only eight or ten feet of the road was
macadamized; the husband of the plaintiff said that the
entire width was about twenty-five feet, and that "there is
20 feet of road where the people travel", and that it was not
one foot from there to the end of the culvert.   Another wit-
ness said that "the road is 15 feet across the middle and on
one side there was five feet of grass and on the other side
there was six feet"; another that, "there is 16 feet of maca-
dam; there are four feet of grass on Day's side and six feet
on Martin's side.   On the side of the accident there are four
feet of bushes the regular roadway, and that four feet is
weeds and dirt, but that is not part of the traveled roadway
unless one pulled in there in order to get out of the way of
an automobile."

He was asked on cross-examination: "In order to fall over,
the wagon, carriage or anything else would have to leave the
road and drive four feet into the bushes, and replied, yes,
sir; from the regular road."   Still another witness said: "The
road and the culvert are 26 feet wide counting the bushes,"
and in answer to the question, "How far was it from where
the foliage was to the edge of the culvert," he said, "Only
about a foot," but added that he had never measured it.   At
least some of the bushes and vines were about three or four

feet high, and as the accident occurred on July 27th the
foliage was doubtless quite thick.   The plaintiff testified that
she could not see through the bushes and she could not see
that there was a culvert there.

One or two of the witnesses said that there had at one
time been a wire fence on the top of the culvert, which was
put there by an occupant of adjoining property, but it had
gone down.   At the time of the accident there were two
posts, in bad condition with two strands of wire on them,
several feet below the top of the culvert, but the evidence
clearly showed that there was no guard or protection on top
of the culvert, excepting in so far as the vines could be said
to be, and it is manifest from the testimony that they were
not only not sufficient to prevent a horse or vehicle from
going over, but they concealed the end of the culvert and the
deep ditch from the view of anyone on the road.   The condi-
tions as they existed at the time of the accident were of such
long standing that there could be no claim by the defendants
of want of notice—indeed the culvert, so far as appears from
the evidence, was originally constructed without any pro-
tection at the end.

The first question then to be determined is whether the
conditions we have described constituted legally sufficient
evidence to go to the jury, to show such negligence on the
part of the commission as it would under the law be responsi-
ble for.   Of course, county authorities can not be said to be
negligent under all circumstances for the mere failure to
erect guard-rails or fences.   It must depend upon circum-
stances, for if in mountainous or hilly localities they be
always required to erect and maintain fences wherever a road
is on a hillside, or about some steep descent, it would add
enormously to the road expenses of a county—so much so
that the requirement would be in many cases prohibitory, and
prevent the construction of roads that would be very desirable
for the neighborhoods.   But there are many places, even at
remote points from towns and cities which are so very dan-
gerous, and can be so easily protected by a reasonable expen-

diture, as to demand some such protection for the benefit of those traveling over them. In this case the road was near the City of Baltimore, was much used by automobiles, carriages and wagons, and the expense of protecting travelers from such dangers as the plaintiff encountered would have been so insignificient that we can not declare as a matter of law that the appellee was under no obligation to furnish some protection—either by placing a fence or guard-rail at the end of the culvert, or at least by keeping it sufficiently clear of bushes and vines to enable those traveling over the road to see the danger of getting near the edge of the culvert and embankment adjoining it. It was for the jury to determine whether under all the circumstances there was negligence on the part of the defendant. It is true that, according to the evidence, the danger point could not be reached unless a vehicle was somwhere from one to four feet from the traveled road, and that such part of the right of way of the appellee was covered with bushes and vines, but it is not unheard of or even unusual for persons meeting automobiles to get beyond the part of a road that is generally used. Even at the present day when automobiles are so numerous and most horses in cities and thickly populated communities have become accustomed to them, it is not always safe to drive close to one which is moving as rapidly as many of them do.

There can be no doubt under the laws of this State, especially the statute which we have referred to above, that it is the duty of the appellee to keep the road of the county in proper condition of repair and reasonably safe for travel. In 15 *Am. & Eng. Ency. of Law,* 455, after saying that a municipality is not required to fence its roads, or put up, barriers simply to prevent travelers from straying from the highway, the law is thus stated: "If there is a dangerous place, however, such as a declivity or excavation, so close to the highway or to the traveled part thereof as to render the latter unsafe for travelers in the absence of a railing or barrier, the want of such railing or barrier constitutes a defect in the highway itself, for injuries from which the

municipality is liable.    But the danger which requires a barrier must be of an unusual character, such as a bridge, declivity, excavation, steep bank, or deep water, and a space adjoining a road or street may be left without a barrier though it is rough and entirely unsuitable for travel."

In this case there was a large culvert and a declivity—the culvert being a part of the road way under the control of the appellee—and no guard was ever on it, except the wire fence which the occupants of the adjoining property placed there for his own benefit some years ago, and that was no longer on it.  We are of the opinion that the case should have been submitted to the jury to determine whether under the circumstances the defendant was negligent, unless there was such contributory negligence on the part of the plaintiff as precluded a recovery.  Without deeming it necessary to cite many of the decisions of this Court which reflect on this branch of the case, the following are more or less applicable; *Allegany County* v. *Broadwaters,* 69 Md. 533; *Worcester County* v. *Ryckman,* 91 Md. 36; *Garrett County* v. *Blackburn,* 105 Md. 226.

It only remains to determine whether the records discloses such contributory negligence on the part of the plaintiff as to preclude a recovery, if she would be otherwise entitled to recover.  The question of contributory negligence only arises when there has been negligence on the part of the defendant, and if the defendant was guilty of negligence in not having a barrier or some protection at the end of the culvert, or in not keeping it free from the bushes, etc., which concealed the danger, we are not prepared to say as a matter of law that the plaintiff was guilty of contributory negligence, merely because she drove off the part of the road that is usually traveled, even if in doing so she drove into the bushes.  Unless there be some evidence that she knew the culvert was there, and was unprotected, and hence was dangerous, the Court can not say that there was contributory negligence, but it was for the jury to determine whether under all the circumstances it was.  As we have seen above,

one of the witnesses said: "On the side of the accident, there are four feet of bushes from the regular road way, and that four feet is weeds and dirt, but that is not part of the traveled road, *unless one pulled in there to get out of the way of an automobile.*" It may be that there was no real necessity for the plaintiff to drive so far to the side, as the horse was gentle and the automobile stopped before reaching her, but she probably did not know that it was going to stop when she started to get off the traveled road, and it is not an unfamiliar sight to see people in. the country—especially women—drive to one side when automobiles are approaching. Indeed when it is remembered at what speed some of them go, and especially when it ·is known how accidents sometimes occur from them in the most unexpected way, it is not surprising that nervous people will give them all the room possible. Of course if the plaintiff knew, or by the exercise of ordinary care could have known, that it was dangerous to get into the bushes, another question would arise, but there is nothing in the record to show that she knew that the culvert was there or was unprotected, or that there was any danger of her wagon sliding off or over the embankment. She testified that she did not, and could not from where she was, see the culvert, and if there were bushes three or four feet high, and vines growing over and down the side of the culvert, it is easy to understand why she could not see the dangers. It is true that she had frequently driven over the road, but she lived four miles from the culvert and especially with the vines and bushes growing over it she might have driven over the road weekly, or daily, without noticing the end of the culvert or the precipice beneath it.

The plaintiff testified that she did not drive out of the road, and if she meant by that that she did not drive out of the portion usually traveled the probability is that she was mistaken, but if she was watching the automobile as it approached, she may have gotten further out than she supposed. According to the evidence, she evidently did not drive right off the culvert, for she had stopped, and it was only

when she was about to start her horse that the wagon slid off. Whether that was caused by the earth giving way just then, from the rain that had fallen that day, or whether the horse backed, or just what caused it to go over, is not shown.

It is not necessary to repeat at length what we have so often said on the subject of contributory negligence, but it is well settled that it is generally for the jury to determine from all the circumstances of the particular case, unless the act relied on to establish it is "distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent," *Heinz* v. *B. & O. R. R. Co.*, 113 Md. 582, 77 At. 980, and "when the nature of the act relied on to show contributory negligence can only be determined by considering all the circumstances attending the transaction, it is within the province of the jury to characterize it." *Straus* v. *United R. Co.*, 101 Md. 499.

In our judgment this case comes within those general rules, and it should have been submitted to the jury. It follows that the judgment must be reversed.

*Judgment reversed, and new trial awarded,*
*the appellee to pay the costs.*