# HENRY J. GLICK

## *vs.*

# THE CUMBERLAND AND WESTERNPORT ELEC-TRIC RAILWAY COMPANY.

*Railway crossings*: *duty at—; structures that obscure the view; steam and electric roads; suburban lines; siganls. Automobiles.*

Railroad tracks are a signal of danger.                p. 312

In order to avoid the imputation of negligence, one attempting to cross a railroad track must first look and listen, and if the view is obstructed, he must stop, look and listen. pp. 312, 313

And if these are obstructions which prevent a clear view of the tracks in both directions, then one about to cross the tracks must stop, look and listen, after he has passed the obstructions.

pp. 313,314

This rule has for its object the protection, not only of those who travel the public roads, but of those who travel in steam or electric railroad cars.                p. 314

The same degree of care is to be used in crossing the tracks of suburban electric railways as of steam railroads.      p. 315

The rule applies as well to electric roads, using public roads, as to those using private rights of way.        p. 315

Both from the standpoint of their own safety, and from that of the menace they are to the safety of others, the observance of these rules is especially incumbent upon the drivers of automobiles.                p. 316

The fact that a railroad had failed to observe the law requiring signs to be erected at crossings, does not excuse one who crosses the railroad, at that point, negligently, and while knowing the railroad was there.                              p. 318

The fact that a railroad has constructed a car barn near a crossing, in a way that obstructs the view, does not affect the rule as to contributory negligence, nor relieve persons of the effects of their crossing the tracks, without the exercise of due care and caution.                              p. 319

Negligence on the part of a defendant does not relieve the plaintiff of the duty to exercise due care and caution, or relieve him of the consequences of his failure to do so.                              p. 319

*Decided December 2nd, 1914.*

Appeal from the Circuit Court for Allegany County. (HENDERSON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Albert A. Doub* (with whom was *W. C. Devecmon* on the brief), for the appellant.

*Benj. A. Richmond* (with whom was *D. James Blackiston* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appellee operates an electric railway between Cumberland and Westernport, in Allegany County, Maryland.

Between Frostburg and Westernport the track of the appellee, for the greater portion of the way, is located on the side and occupies a part of one of the public roads of the county. The railway runs through the open country, the track is constructed with "T" rails, and the cars are operated at a high speed.

At a point called Reynolds the appellee erected a car barn, one hundred and twenty feet long and about thirty-seven feet wide, on one side of the public road and a power house on the opposite side. Assuming that the public road, at this point, runs north and south, the barn is on the east side of the road, and the track of the appellee, for the entire length of the barn, is located between the barn and the driveway of the road. Just below the south end of the barn the public road makes a sharp curve and crosses from the west side to the east side of the railway track. South of this crossing, towards Westernport, the railway track runs on the west side of and on a level with the public road. A person driving north on the road has, for a long distance before reaching the crossing, an unobstructed view of the railway track and the crossing, but until he reaches the point where the road turns to cross the track his view of the track beyond or north of the crossing, and of a car approaching the crossing from the north, is partially if not completely obstructed by the car barn. The evidence further shows that when you are traveling over the road south of the crossing the barn also interferes with the sound of a car approaching the crossing from the north, and the sound of its whistle, and that the motorman in charge of the car cannot see a person driving on the public road south of the barn until that person reaches the point where the road turns to cross the railway track.

On the day of the accident which gave rise to this suit, and which occurred about four o'clock in the afternoon of July 28th, 1913, the appellant drove in his automobile, a seven passenger tourning car, from Cumberland to a village called Franklin, several miles south of Reynolds. He was accompanied by his wife and two friends, and the car was driven by an experienced chauffeur who had been in the employ of the appellant for several years.

The appellant and the chauffeur were familiar with the road, the location of the appellee's track and knew that the cars were operated at great speed. They drove over the crossing on their way down to Franklin, and after remaining

there about half an hour started back to Cumberland over the same road. As they approached the crossing, with a clear view of the track and the crossing, the chauffeur says he was driving at the rate of about fifteen miles an hour until he got to within about thirty feet of the crossing, when he reduced the speed of the automobile to about eight or ten miles an hour, and changed from high to the second gear in order to get sufficient power to take him over the crossing, there being a slight ascent from the east side of the road over the crossing to the west side of the track. The appellant and the chauffeur say that as they approached the crossing, and were traveling at the rate mentioned, they were looking and listening for a car, but did not see or hear one. The chauffeur states that when he "got almost on the track" he saw a car coming from behind the barn, "and when I got stopped, the front wheels were on the track and the car struck me." He says further that as they drove up the road towards the crossing the machine made very little noise, and not enough "to drown the sound of" a car or its whistle; that it was a clear day, and that he can hear the whistle of a car half a mile away; that the automobile makes a little more noise when running on the second gear; that the barn obstructed the view of the track beyond the crossing; that he did not stop the machine to look or listen for a car, and that the fender on the car struck the right front wheel of the automobile and turned the automobile around. The appellant, who was sitting in the front seat with the chauffeur, says that they passed a car on their way down to Franklin, and that when they were returning and were approaching the crossing he looked and listened for a car; that the barn obstructed his view of the track beyond the crossing, and that as he did not see or hear a car "we kept on until we seen the approach of a car, and the man stopped, and unfortunately we were left on the track, and the car struck us and shoved us eight or ten feet down the track." As the result of the collision the auto-

mobile was damaged and the appellant's head was cut and his knee injured.

The motorman of the electric car, whose testimony was corroborated by the conductor and a number of passengers on the car at the time of the accident, states that he blew the whistle for a road crossing a short distance north of the barn; that as he approached the barn he blew the whistle again for the crossing at which the accident happened, and reduced the speed of the car to about seven or eight miles an hour; that there is a slight descent in the track from the north end of the barn to the crossing; that as he was coming along towards the south end of the barn, when he got about twenty feet from the crossing he saw the appellant's automobile approaching the crossing; that the automobile was about fifteen feet from the track when he first saw it; that he threw on the brakes of the electric car, locked the wheels of the car and did everything he could to stop it. He describes what followed as follows: "As I got to the crossing I was almost to a stop and this auto came right up, and right on that crossing is where we both met, and he run his car right into my fender, his front wheels right into my fender. The glass on the front of his car was broken, and my fender was broken and bent up." He states further that when the car and automobile collided the car pushed the automobile two or three feet before the car stopped; that he was looking towards the crossing as he approached it; that he saw the automobile as soon as it was possible for him to have seen it, and that he stopped the car within about twenty-two feet.

At the conclusion of the testimony the Court below withdrew the case from the jury on the ground that the plaintiff had been guilty of contributory negligence, and this appeal is from the judgment accordingly entered for the defendant.

That a railroad track is a signal of danger, and that one attempting to cross it must, in order to avoid the imputation of negligence, first look and listen, and if the view be obstructed, *stop,* look and listen for an approaching car, is a

principle too firmly rooted in the law of this State to admit of any further question. It expresses the fixed standard of necessary caution and care, and has for its object the protection not only of those who travel on the public roads but also those who require the service of steam and electric cars. In the case of *P., W. & B. R. R. Co.* v. *Hogeland,* 66 Md. 149, the late CHIEF JUDGE ALVEY, after referring to the duty of railroad companies, said: "But while such is the plain duty of the managers of railroad trains, it is equally the duty of those approaching the crossings as travelers on the highways, to approach with care, and the more difficult and dangerous the crossing, the greater the care required. The rule is now firmly established in this State, as it is elsewhere, that it is negligence *per se* for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains; and if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track, should stop, look and listen, before attempting to cross. Especially is this required where a party is approaching such crossing in a vehicle, the noise from which may prevent the approach of a train being heard. And if a party neglect these necessary precautions, and receives injury by collision with a passing train, which might have been seen if he had looked, or heard if he had listened, he will be presumed to have contributed, by his own negligence, to the occurrence of the accident; and unless such presumption be repelled, he will not be entitled to recover for any injury he may have sustained. This is the established rule, and it is one that the Courts ought not to relax, as its enforcement is necessary as well for the safety of those who travel in railroad trains as those who travel on the common highways." That this rule has not been relaxed is shown by the statement of the present CHIEF JUDGE of this Court in *Brehm* v. *P., B. & W. R. Co.,* 114 Md. 302, where it is said: "It is now thoroughly established in this State

314    GLICK vs. CUMB. & W. ELEC. RY. CO.

Opinion of the Court.    · [124

that if the view be obstructed it is the duty of a traveler to stop, look and listen before attempting to cross a railroad. That rule is not complied with by merely stopping, looking and listening once, if the object in doing so cannot there be accomplished, but can be closer to the tracks. A traveler might as well stop, look and listen a quarter of a mile from the railroad as thirty or forty feet away, if he can neither see nor hear at the latter point, although he can before he attempts to cross the track * * *. It may be that the traveler can better determine whether it is safe to cross by stopping at a point fifty or a hundred feet from the crossing than he could by stopping closer, as sometimes the view up and down the track is more extensive at a remote than a closer point, owing to the conditions, but it would be useless to adopt the rule which requires a traveler on the highway to use care, before attempting to cross the railroad tracks, if such care is to be exercised away from the track, and then uttterly neg= lected as he approaches near to it. That rule is for the protection of travelers on a highway as well as of the passengers and employees on the trains * * * the traveling public of the present day demands speed, and distance is overcome by it, it is to be hoped that the day is not far distant when grade crossings will be unknown—at least such as are frequently used by the public—but until that time arrives the law at least must protect passengers and trainmen to the extent of discouraging recklessness on the part of those crossing the tracks."

Learned counsel for the appellant disclaims a purpose to question the application of this rule to crossing the tracks of steam railroads, but suggests that it should not be extended to electric railways. No good reason, however, can be suggested why it should not apply to suburban and interurban electric railways such as the defendant operates. The great speed at which their cars are operated, and which they must attain in order to meet the convenience of the public, renders it necessary for the safety of those using the public

roads and the cars that the same degree of care should be exercised in crossing their tracks. That the principle does apply to crossing the tracks of electric railways of the kind mentioned has been fully recognized by this Court. In the case of *Carey* v. *The Appellee in this case,* 106 Md. 529, JUDGE SCHMUCKER, speaking for the Court, said: "It has long been the settled law of this State that it is negligence *per se* for any one to attempt to cross the tracks of a railway without first looking and listening for approaching trains and stopping to look if the view be obstructed, and if he neglect these precautions and is injured by a collision with a passing train, which he might have seen if he had looked or heard if he had listened, he will be presumed to have contributed to the occurrence of the accident, and unless that presumption be overcome he cannot recover for the injury. That this proposition applies to attempts to cross suburban electric railways has been held by us in *McNab* v. *United Railways,* 94 Md. 727; *Hatcher* v. *McDermott,* 103 Md. 78, and other cases."

It is also urged on behalf of the appellant that a distinction should be made between a railroad or an electric railway which occupies its private right of way, and a railway using one of the public highways. But the application of the principle does not rest upon the title to the right of way. Those using public crossings of railroads or railways are not trespassers. They have a right to use them, and all that the rule requires is that they shall exercise reasonable care and caution in doing so for their own protection and the safety of those on the cars. If due care and caution requires a person to stop, look and listen for an approaching train before attempting to cross the tracks of a suburban or interurban electric railway using its own private right of way, the same degree of care must be required where the railway uses a part of the bed of a public road. The crossing is not less dangerous because it is approached by the cars of a railway company over its private right of way. In the case of *NcNab*

316    GLICK vs. CUMB. & W. ELEC. RY. CO.

Opinion of the Court.                      [124

v. *United Rys. Co.*, 94 Md. 719, and the case of *Phillips* v.
*W. & R. Ry. Co.*, 104 Md. 455, the tracks of the defendant
companies were laid along the side of public highways, yet
this Court held that the plaintiffs in those cases were bound
by the same rule of care and caution in crossing the defend-
ants' tracks that applies to crossing the private right of way
of electric railways.

Since the introduction into common use of automobiles
there is even greater reason for a strict adherence to the rule
stated. The great size and weight of these machines, the
speed at which they are driven over the public roads, and the
temptation to those operating it to dash over railroad cross-
ings without stopping to look or listen for an approaching
train, subjects those in trains and cars to increased danger.
In the case of *New York C. & H. R. R. Co.* v. *Maidment,*
21 L. R. A. (N. S.) 794, the United States Circuit Court
of Appeals said: "With the coming into use of the auto-
mobile, new questions as to reciprocal rights and duties of
the public and that vehicle have and will continue to arise.
At no place are those relations more important than at the
grade crossings of railroads. The main consideration hither-
to with reference to such crossings has been the danger to
those crossing. A ponderous, swiftly moving locomotive fol-
lowed by a heavy train is subjected to slight danger by a
crossing foot passenger, or a span of horses and a vehicle; but,
when the passing vehicle is a ponderous steel structure, it
threatens, not only the safety of its own occupants, but also
those on the colliding train. And, when to the perfect con-
trol of such a machine is added the factor of high speed, the
temptation to dash over a track at a terrific speed makes the
automobile, unless carefully controlled, a new and grave ele-
ment of crossing danger. On the other hand, when properly
controlled, this powerful machine possesses capabilities con-
tributing to safety. When a driver of horses attempts to
make a crossing and is suddenly confronted by a train, diffi-
culties face him to which the automobile is not subject. He

cannot drive close to the track, or stop there, without risk of his horse frightening, shying, or overturning his vehicle. He cannot well leave his horse standing, and, if he goes forward to the track to get an unobstructed view and look for coming trains, he might have to lead his horse or team with him. These precautions the automobile driver can take, carefully and deliberately, and without the nervousness communicated by a frightened horse. It will thus be seen an automobile driver has the opportunity, if the situation is one of uncertainty, to settle that uncertainty on the side of safety, with less inconvenience, no danger, and more surely, than the driver of a horse. Such being the case, the law, both from the standpoint of his own safety and the menace his machine is to the safety of others, should, in meeting these new conditions, rigidly hold the automobile driver to such reasonable care and precaution as go to his own safety and that of the traveling public * * *. The duty of an automobile driver approaching tracks where there is restricted vision to stop, look and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty, and these safeguarding steps the plaintiff failed to take. He stopped where stopping served no purpose, and failed to stop where stopping would have disclosed danger. He made chance, and not sight, the guaranty of his safety. We are clear he was guilty of contributory negligence." *Brommer* v. *P. R. R. Co.,* 179 Fed. 577.

In the case at bar the evidence produced by the plaintiff is to the effect that as he approached the crossing the car barn obstructed his view of the track beyond the crossing. He did not at any point stop to look and listen for a car, but attempted to rush over the crossing at the speed of eight or ten miles an hour. If he had stopped his car at or near the track he could have seen the approaching car and thus avoided the injuries complained of. Or if he had reduced the speed of his car and kept it under such control as would have enabled him to stop it as soon as he saw an approaching car the colli-

sion would not have happened. Having failed to exercise these precautions, it is clear that his own negligence directly contributed to the accident.

The appellant relies upon Section 280 of Article 23 of the Code of 1912, which provides that—

"Every railroad company organized under this article shall be required to erect at all points where its road shall cross any public road, at a sufficient elevation from such public road to admit of the free passage of vehicles of every kind, a sign with large and distinct letter placed thereon, to give notice of the proximity of the railroad, and warn persons of the necessity of looking out for the cars, and any company neglecting or refusing to erect such sign shall be liable in damages for all injuries occurring to persons or property from such neglect or refusal."

The evidence shows that there was no sign at the crossing in question of the character referred to in the above section, and the appellant contends that it should have been left to the jury to determine whether the accident might not have been avoided if the defendant has complied with its provisions.

The evident purpose of that section was to provide for a notice to persons using the public roads of the proximity of the railroad track, and thus warn them of the necessity of looking out for cars. Here the plaintiff and his chauffeur knew of the proximity of the railway track, and did look and listen for a car. Under such circumstances it would be impossible to attribute the accident to the failure of the defendant to erect a sign at the crossing, even if we assume that the provision of the Code applies to electric railways. In the case of *Bacon* v. *R. R. Co.,* 58 Md. 482, JUDGE ALVEY said: "That it was quite immaterial that the whistle was not sounded as the train approached the crossing; for conceding that omission to have been negligence on the part of the defendant in respect to the deceased, yet, if the latter saw or heard the approaching train in time to get from the track,

the sounding of the whistle would have added nothing to the admonition to escape." *Phil. & Balto. R. Co. v. Holden,* 93 Md. 417.

The fact that the car barn, which obstructed the appellant's view of the track beyond the crossing, was erected by the defendant, does not affect the rule of contributory negligence. Negligence on the part of the defendant does not relieve the plaintiff of the duty to exercise due care and caution, or relieve him of the consequences of his failure to do so. *Annapolis, etc., R. Co. v. Hickox,* 104 Md. 659; *Keyley v. Central R. Co.,* 64 N. J. Law Rep. 355.

The plaintiff offered to prove "that between the towns of Lonaconing and Reynolds, where this accident happened, a distance of about five miles," the defendant's "track crossed over the county road some twelve or fifteen times—that two other places where these crossings take place, the view is obstructed by buildings, preventing a driver from seeing an approaching car," and his first exception was to the refusal of the Court to admit the evidence. The theory upon which this evidence was offered, as stated in the brief of the appellant, is that where a traveler over a public highway in the country is forced to cross over the tracks of a railroad so frequently he becomes indifferent to the danger of crossing and naturally does not exercise the same degree of care and caution, and that he should not be required to "exercise more caution than the prudence of ordinary man suggests." To adopt this rule would, on the same principle, exempt railroad companies from liability for negligence whenever their employees, because of frequent railroad crossings, become indifferent to the danger of crossings, and neglect the precautions required of them. The second and only remaining exception was to the action of the Court below in withdrawing the case from the jury, and as we find no error in either of these rulings the judgment appealed from must be affirmed.

*Judgment affirmed, with costs.*