STATE, TO USE OF MARY LOUISE BRANDAU ET AL. *v.* JOHN E. BRANDAU.

[No. 28, April Term, 1939.]

*Decided May 17th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*R. Samuel Jett,* with whom was *F. Murray Benson* on the brief, for the appellants.

*Walter V. Harrison,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The suit in this case is instituted under the provisions of what is commonly known as Lord Campbell's Act, to the use of Mary Louise Brandau, widow of John Vernon Brandau, deceased, and Barbara Anne Brandau, infant child of said deceased, by her mother and next friend, the said Mary Louise Brandau, upon the following state of facts:

On June 6th, 1937, John Vernon Brandau was a passenger in an automobile owned and operated by John E. Brandau, the appellee. In the automobile, at the time of the accident hereinafter mentioned, was Joseph Fisher, another passenger, both of the passengers being guests of the driver. The three men had been riding in the car for several hours prior to the accident, which happened shortly after 9:30 or 10:00 p. m.

The party left Pikesville, *en route to* Towson, in Baltimore County, *via* what is known as "Old Court Road", and all three of the occupants were sitting on the front seat of the car, the defendant occupying the driver's seat with the plaintiff's decedent in the middle, and Joseph Fisher on the extreme right.

The uncontradicted testimony shows that up to the time of the accident the car was being carefully operated; that the occupants were engaged in casual conversation, and that shortly after they entered "Old Court Road," and while travelling in an easterly direction at from forty to forty-five miles an hour, they approached a sharp curve to their right. Mr. Fisher, the only occupant of the car who testified in the case, testified that without difficulty he saw a "target" warning sign as the curve was approached. He did not, however, call the attention of the driver to the sign. His testimony then proceeds as follows: "Q. Now, will you tell us in detail just what

happened after you saw the warning sign? A. Well, Vernon sitting in the middle there was holding a bottle in his lap and it seemed he said to Jack, how do you get this damn bottle open. I turned my head like that to look and the next thing I knew the accident had happened. I didn't know anything more. Q. What, if anything did John Brandau do, or Jack Brandau, I believe you call him, when Vernon said, how do you get the bottle open? A. Why he turned his head to glance at it also. Q. Is that when the accident happened? A. That is correct.

Further testifying, the witness stated that, after John E. Brandau, the driver, turned his head, except that the car was then travelling at from forty to forty-five miles an hour, because of injuries which he himself had received, he did not recall anything else that happened.

On cross examination this witness said that the bottle was a whiskey bottle; that he had not seen it until at the instant the above question was asked; that the driver turned his head to reply to the question asked by the deceased, and then added that "everything happened so quick when he turned his head that I don't remember." On re-direct examination the aforegoing testimony was modified to the extent that the question was addressed to the driver; the witness saying that he supposed that to be the case, but giving no reason for his conclusion that the remark of the decedent was more especially directed to the driver than to himself.

John Whitridge testified that he heard a crash, and, in company with his son, immediately went to the scene of the accident. He found the car in an upside down position, headed in a northwestern direction; all of the occupants were thrown from the car and lying near it, the plaintiffs' decedent being found to the southeast of the car and the driver being pinned under it. All three were then seriously injured. Testifying further, he stated that the accident occurred on a curve which was marked by a "target" warning sign, which was not obscured in any way and "visible for quite some distance." According to the witness the road was not lighted. He

examined the marks which he found on the side of the road, and his examination, as indicated by the marks made by the car, showed that instead of its course being directed along the trend of the curve, the course followed by the car was across the road to an embankment; that it ran along the top of the embankment for a distance of from sixty to seventy feet, and at the latter point turned over and landed in a ravine.

Photographs admitted in evidence show the curve to be a sharp one, and indicate that the warning sign would have been seen in the direction in which the car was being driven for a considerable distance by the occupants, provided the lights on the car were in use.

From the injuries received in the accident, the plaintiff's decedent died on the day following the same.

At the conclusion of the plaintiff's case, the defendant offered a prayer for a directed verdict upon the ground that the accident complained of was caused or contributed to by the negligence of the plaintiff's decedent, and it is from the ruling of the trial court in granting the prayer that this appeal is taken.

In 1 *Berry on Automobiles* (6th Ed.), sec. 691, it is said:

"Proximate cause enters into the determination of the question of contributory negligence on the part of an automobile occupant, as it does in every other question of negligence and liability or non-liability therefor; and although it may be found that the occupant was negligent, such negligence is not a bar to recovery by him if it was not a proximate cause of the injuries received by him. * * *

"In an action by a guest against his host for injuries caused by negligent driving by the latter, to defeat recovery by the defense of contributory negligence, it is necessary to show, not only negligence on the part of the guest, but that such negligence was a proximate cause of the injury, without which the injury would not have occured."

And as said in *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469, 474, 24 L. Ed. 256: "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it."

From the above authorities, therefore, it will be seen that cases in which courts may declare, as a matter of law, whether an act was the proximate cause of the injury, are limited to those in which but one inference can be drawn from the facts.

In other words, in order to sustain the ruling of the lower court in granting the prayer now under consideration, it must first be shown, from all the evidence presented by the record, that the accident was due to or caused by some prominent and decisive negligent act on the part of the plaintiff's decedent, which directly contributed to the same, and such negligent act must be of such prominent and decisive character as to leave no room for differences of opinion thereon by reasonable minds. *Balto. & O. R. Co. v. State, use of Hendricks*, 104 Md. 76, 64 A. 304; *Cooke v. Baltimore Traction Co.*, 80 Md. 551, 31 A. 327; *Taxicab Co. v. Emanuel*, 125 Md. 246, 93 A. 807; *Merrifield v. Hoffberger Co.*, 147 Md. 134, 127 A. 500; *Askin v. Moulton*, 149 Md. 140, 131 A. 82; *Lozzi v. Pennsylvania R. Co.*, 152 Md. 508, 137 A. 293; *Barker v. Whittier*, 166 Md. 33, 170 A. 578; *Glick v. Cumberland & W. Electric Ry. Co.*, 124 Md. 308, 92 A. 778; *Crystal v. Baltimore & Bel Air Electric R. Co.*, 150 Md. 256, 132 A. 629; *Baltimore Transit Co. v. Lewis*, 174 Md. 618, 199 A. 879.

In *McNab v. United Rwys. & Elec. Co.*, 94 Md. 719, 51 A. 421, it is said: "Contributory negligence is simply negligence, and is, like primary negligence, relative, and not absolute; and, being relative, it is dependent on the peculiar circumstances of each particular case. There are many acts which would not be negligent when done under some conditions, though the same acts, if done under different conditions, might be highly negligent; and

this is equally true of contributory negligence. So, ultimately, in every case of this character, it becomes necessary to view the entire surroundings to determine whether either primary or contributory negligence has been established."

Applying the principles enunciated by the quoted authorities to the facts established by the testimony in the instant case, the question arises as to whether the remark of the plaintiff's decedent, namely, "how do you get this damn bottle open" constituted negligence on his part, of such prominent and decisive character, as to leave no room for differences of opinion thereon by reasonable minds, and, in effect, was the proximate cause of the injuries received by him, resulting in his unfortunate death.

As stated, usually questions of contributory negligence, like those of proximate cause, are properly submitted to the jury, or as said in *Washington, B. & A. R. Co. v. State,* 136 Md. 103, at page 111, 111 A. 164, at page 167: "While there are cases in which the guests or occupants have been held guilty of such contributory negligence as to preclude recovery as matter of law, it will be found by an examination of the numerous cases on the subject that generally the question must be submitted to the jury." *Roth v. Highways Commission,* 115 Md. 469, 479, 80 A. 1031; *Heinz v. Balto. & O. R. Co.,* 113 Md. 582, 77 A. 980; *Strauss v. United Rys. & Elec. Co.,* 101 Md. 497, 61 A. 137; *Earp v. Phelps,* 120 Md. 282, 87 A. 806. However, there are some exceptions to the general rule. See note to the case of *Anthony v. Keifner, Ann. Cas.* 1916E, 269, and note to *Christopherson's Case,* as reported in *Ann. Cas.* 1916E, 685.

Ascertainment of the line of demarcation between questions purely legal and those involving matters of fact only is not always easy of accomplishment. The instant case readily illustrates that deduction, and it is obvious that the question presented by it is a narrow one.

Assuming, as we must, the truth of all of the plaintiff's testimony, including all reasonable inferences, in

so far as they tend to support the plaintiff's right of action, which may be drawn therefrom, it follows that, in order to determine the correctness of the ruling of the trial court in granting the prayer, it must appear that the accident was caused by some prominent and decisive act on the part of the plaintiff's decedent, which directly contributed to the incident, and was the proximate cause thereof; and that such negligent act was of such prominent and decisive character as to leave no room for difference of opinion thereon in the minds of reasonable men.

Reverting again to the facts of the case, we are confronted by a situation in which an automobile was being operated by a driver to whom the curve warning sign was visible for some distance ahead of the curve. The sign was seen by the only occupant of the car whose testimony is before us, and it is but a fair inference that it was seen, or at least could have been seen, by both the driver and the plaintiff's decedent. Under these circumstances the question was asked, and the conclusion is inevitable that it diverted the attention of the driver, and was the negligent act which, although contributed to by the latter, was the proximate cause of the accident.

Careful investigation warrants the conclusion that cases in which, because of the contributory negligence of a complaining guest, a directed verdict has been awarded a defending host, are not numerous in any jurisdiction in this country. As a matter of fact, cases similar to the instant case usually present questions about which reasonable minds may differ.

However, the cases of *Kirby v. Keating*, 271 Mass. 390, 171 N. E. 671; and *O'Toole v. Magoon* and *Settevedemio v. Magoon,* Mass., 4 N. E. 2nd 357, both of which are cited in the appellant's brief, and were urged in the oral argument before this court in support of the appeal, are in our opinion not analogous to the instant case.

In the former case, the plaintiff was a guest in the defendant's car at the time of the accident. She was being

solicited by her host to prolong the trip, at a time when she was insisting to return to her home. She asked the defendant the time, and he thereupon started to look at a wrist watch which he wore. In doing so he put his left hand under the wheel and at the dashlight, and bent forward to the extent that his head almost touched the dashboard. The plaintiff testified that she had not seen the watch before, that it took the defendant quite a while to look at it, that in looking at the timepiece he bent his head down, did not take his eye off the watch, that he did not watch the road, and that it seemed to take a long time to look at the watch. It was there held that "upon the testimony of the plaintiff it could not have been ruled as a matter of law that her negligence contributed to the accident. The fact that she asked the defendant for the time was not negligence on her part. When she made the inquiry it could have been found that she did not know that he wore a wrist watch, and it cannot be said as matter of law that by making the inquiry she had any reason to expect the defendant would abandon all care in the operation of his automobile."

In the latter cited case, the plaintiffs O'Toole and Settevedemio were guests in Magoon's car. The night was exceedingly dark and rainy, and the road was slippery. Ann Settevedemio, one of the passengers occupying the rear seat, said to the defendant, who was driving, "take your time Mickey," and also said to him "young and unsophisticated." He then took his right hand from the wheel, and placed it on the back of the adjoining seat toward Ann and repeated the words "young and unsophisticated." The car at that moment zig-zagged, and Ann said "watch the road Mickey." The defendant with both hands attempted to control the car, which was then in a car track in the center of the road, but continued to drive without any diminution of speed, and crashed into a pole about a foot off the travelled part of the highway. The trial court held that the question whether the plaintiffs were guilty of contributory negligence was one of

fact, and, drawing no distinction between the two parties plaintiff, although the plaintiff O'Toole took no part in the incidents above described, held that, as to each plaintiff, the question of contributory negligence was for the jury.

In contrast with the cases next above cited is that of *Campbell v. Campbell,* 316 Pa. 331, 175 A. 407, wherein the plaintiff had engaged the defendant's attention by discussing certain papers in such manner as to distract the latter's attention in operating the car in which they both were riding. The trial judge, upon that state of facts, submitted the question of contributory negligence to the jury and there was a verdict for the defendant, on which a judgment was entered. Upon appeal the judgment was affirmed, and in the course of its opinion the appellate court added that the case should have been withdrawn from the jury.

A comparison of the above cases with the case before us, gives force to our former deduction that the instant case presents a question that is obviously close. Nevertheless, when confronted, as we are, with facts tending to show that the question was asked by the plaintiff's decedent under such circumstances as would naturally tend to suddenly distract the attention of the driver, at an instant when imminent danger, visible to the plaintiff's decedent as well as to the defendant, was present, we reach the same conclusion as that which was reached by the learned trial judge.

> *Judgment affirmed, with costs to the appellee.*