## COUNTY COMMISSIONERS OF CARROLL COUNTY *v.* STAUBITZ

[No. 207, September Term, 1962.]

*Decided April 15, 1963.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Donald M. Smith* and *A. Earl Shipley,* with whom was *T. Hunt Mayfield* on the brief, for the appellant.

312

*Melvin J. Sykes,* with whom were *Emanuel H. Horn* and *Charles E. Hogg* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

This appeal is from a judgment entered upon the verdict of a jury in the Circuit Court for Howard County, awarding appellee $80,000 as damages for personal injuries suffered when an automobile in which she was riding as a passenger ran off a county road in Carroll County.

On April 28, 1959, shortly after 10:00 p. m., appellee was a passenger in a car driven by Shirley Mae Shamer (formerly Shirley Mae Lewis), one of the defendants below, and owned by William Clayton Day, father of Mrs. Shamer, and also a defendant below. In company with a man named Reed, the two young women were traveling east on Arrington Road to visit some friends in Ellicott City. This road may be characterized as a secondary county road, not heavily traveled, winding in its course, with many curves, and used as an alternate road between Sykesville and Ellicott City. It had a macadam surface fourteen feet wide, with a dirt shoulder of five or six feet on each side. Prior to the accident it had been raining, the road was wet, and was overlaid with patches of fog. Approaching the place of the accident Arrington Road makes a gradual right turn down a slight grade and, at a point where an old logging road on the right side leads off on a line with what would appear to be a continuation of Arrington, that road itself makes a sharp ninety degree turn to the left and crosses Piney Run, a small stream, over a bridge twelve feet wide. The driver, Mrs. Shamer, traveling between twenty and thirty miles per hour, saw the sharp turn necessary to cross the bridge too late, the automobile left the road on the right side and plunged into the stream between the logging road and the end of the bridge.

Testimony indicated that the lights and windshield wipers were functioning properly, and that the automobile radio was in operation. It also appears that the three people in the automobile were carrying on a conversation. There was also testimony that outside of the patches of fog visibility was from at

least thirty feet to no more than one hundred feet. Mrs. Shamer testified she thought the logging road was a continuation of Arrington Road, due to the presence of mud on the road and the fact that it was of blacktop construction. She testified that when she realized she had erred she attempted to turn, put on her brakes, but that it was too late, and her effort resulted in the automobile going into the stream.

Although the driver and Mr. Reed were not seriously injured, the appellee suffered severe, disfiguring injuries to her face, including the loss of one eye.

Much of the testimony below was concerned with the location of warning signs and markers on Arrington Road as the road approached the bridge. There appeared to be little question that some time prior to the day of the accident, there were signs indicating "Slow", "Narrow Bridge", and various reflectors and markers, both before the turn and at the ends of the bridge. There was also testimony as to whether these were present on the night of the accident, and if not, how long had they been missing from the area so as to not give proper warning of the conditions. There was considerable conflict on these points. The two women in the automobile testified on direct examination that there were no signs present along this portion of the road on that night, but on cross examination Mrs. Staubitz said she did not remember seeing any. The passenger Reed was not called as a witness to testify at the trial. It was not disputed that one bridge marker on the left side of the bridge, approaching from the west, was present and that the marker on the right side was missing. Both the driver and the appellee had driven over this road on previous occasions and knew of the existence of the bridge. Of course, as we shall soon see, our inquiry is whether the appellee offered sufficient evidence of primary negligence on the part of the appellant to take the case to the jury.

Appellee's original declaration named Mr. Day and Mrs. Shamer as defendants. In two subsequent amended declarations, the present appellant and Thomas F. Wright, t/a Liberty Stone Company, were joined as defendants. The case was removed to Howard County from Carroll County in July 1961, after it was at issue as to all defendants.

At the end of the plaintiff's case, verdicts were directed in favor of Day for lack of any evidence of agency, and for Wright for lack of any evidence of negligence. The case continued against the County Commissioners and Mrs. Shamer, and the jury returned a verdict in favor of the defendant Shamer and against the appellant in the amount of $80,000.

On this appeal the County Commissioners make five contentions as grounds for reversal. However, in the view we take of the case it will only be necessary to discuss one of them. That contention is that it was error to deny appellant's motion for a directed verdict at the close of all of the evidence since the evidence is claimed not to show appellant to have been negligent, or, if such negligence was shown, it was not a proximate cause of the injury complained of.

In a long line of cases we have held that if there is any evidence, or proper inferences from evidence, legally sufficient to support a finding of negligence by the defendant proximately causing injury, a motion for a directed verdict on this issue should be refused. *York Motor Express Co. v. State,* 195 Md. 525, 532, 74 A. 2d 12 (cases are collected in 21 M.L.E., *Trial,* p. 243, n. 39). The alleged negligence of the appellant was the failure to keep Arrington Road, and in particular the curve and bridge approach in question properly marked and reasonably safe for the passage of persons using and driving upon this road.

County Commissioners are charged with the duty of keeping county roads in good repair and in a condition reasonably safe for travel and use, and the county, in an action against the county commissioners, may be held liable for injuries caused by any defect in a county road due to their negligence. *State v. Prince George's County,* 207 Md. 91, 113 A. 2d 397; *Walter v. Montgomery County,* 179 Md. 665, 22 A. 2d 472. The fact that the dangerous condition is not actually in the road, but is in close proximity to the boundaries of the road does not relieve the county of the duty to warn or protect travelers from such defect, if such defect would make the roadway unusually and extraordinarily hazardous for travel. *Birckhead v. Baltimore,* 174 Md. 32, 197 Atl. 615. Cf. *Pierce v. Baltimore,* 220 Md. 286, 290, 151 A. 2d 915 (a case involving a metal

plate covering a drain adjacent to an unpaved strip of ground adjoining a road, over which the plaintiff stumbled while traveling on the unpaved strip).

The standard of care required of county commissioners is to use reasonable care and diligence to keep the county roads in a safe condition. *State v. Prince George's County, supra.* They are not insurers against accidents on the roads. *Anne Arundel County v. Carr,* 111 Md. 141, 73 Atl. 668. Although the standard of reasonable care remains constant, what is reasonable care in a given situation varies with the conditions present on such road or highway. Reasonable care on a busy, often-traveled highway requires greater diligence on the part of the county commissioners than that required on a relatively little traveled road. In *Roth v. Highways Commission,* 115 Md. 469, 475, 80 Atl. 1031, this Court said:

> "Of course, county authorities can not be said to be negligent under all circumstances for the mere failure to erect guard-rails or fences. It must depend upon circumstances, for if in mountainous or hilly localities they be always required to erect and maintain fences wherever a road is on a hillside, or about some steep descent, it would add enormously to the road expenses of a county—so much so that the requirement would be in many cases prohibitory, and prevent the construction of roads that would be very desirable for the neighborhoods."

In *Birckhead v. Baltimore, supra,* at page 38, this Court held that the dangerous place or condition, near a highway, which imposes a duty on a municipality to erect a railing, barrier, or other safeguard, must be such as would create a reasonable probability of an accident occurring to a traveler, ordinary care, the measure of the duty required, not exacting that the municipality guard against unusual or unforeseen accidents.

In *Wessels v. Stevens County* (Wash.), 188 Pac. 490, the road in question was a principal thoroughfare between two towns. At one point it took an abrupt one hundred degree turn around the brow of a hill. The weather was good, it was dark, the headlights of the car gave forty feet of visibility, and it

was traveling eight to ten miles per hour. The administratrix of the man who was killed when the car failed to make a turn and rolled into a deep valley adjacent to the road brought an action against the county for negligence in not marking the turn. The Supreme Court of Washington affirmed the action of the lower court in granting the county's motion for a non-suit. The Court said that the county's negligence depended on whether the road at the curve constituted an extraordinary condition or unusual hazard. It said that the condition was a common one on the highways of Washington and it would be too much to require the counties to mark every such situation.

In *Clouse v. County of Dawson* (Neb.), 74 N. W. 2d 67, 55 A.L.R. 2d 991, another case charging a county with negligence in not placing warning signs at a curve in a road which bordered on a ravine, the Supreme Court of Nebraska reversed the trial court for failing to sustain defendant's motion for a directed verdict. The Court stated, at 74 N. W. 2d 73:

> "The duty of a county to warn against dangerous places or hazards beyond the limits of the highway exists only where such places are substantially joining the highway, or in such close proximity thereto as to be in themselves dangerous, under ordinary circumstances, to travelers thereon who are using reasonable care. Warning signs are intended to make the highway safe, and not to make or define its limits so as to warn travelers not to go outside them."

At the same page the Court continued:

> "The county should be charged with the duty to anticipate only those consequences which in the ordinary course of human experience might reasonably be expected to result from the ordinary use of the highway in the exercise of due care."

In *Olson v. Wayne County*, 59 N. W. 2d 400, another Nebraska case, the direction of a verdict for the defendant was affirmed. That case involved a somewhat similar situation as in the instant case. There were no warning signs on a county road which led to a nearly ninety degree turn onto a bridge.

The plaintiff, riding in a car with another, was injured when the car failed to make the turn on a dark night and ran off the bridge. The Court, in citing *Tomjack v. Chicago & N. W. Ry. Co.* (Neb.), 217 N. W. 944, stated that it would be a greater burden than the law justifies to require the county to guard or mark every turn in the road. Aptly, the Court said that if the driver had followed the road there would have been no accident.

Still another Nebraska case which is quite similar to the present case is that of *Dickenson v. Cheyenne County,* 18 N. W. 2d 559. There a motorist, driving thirty miles per hour on a dead end road which required him to turn either east or west, was injured when he ran through the dead end into a borrow pit. There were no warning signs, and it was dark and foggy at the time of the accident. The plaintiff did not see the intersection until he was in it. He charged the road was insufficient by reason of not having warning signs installed either along the road or across the dead end. The fact that the road turned could, under normal conditions, be seen for several hundred feet. The Nebraska Supreme Court reversed a judgment for the plaintiff and dismissed the case, saying that the failure to put up a sign showing that the road turns is not such an omission as would charge the county officers with negligence in their duty in that regard.

Applying the law enunciated in the *Birckhead* and *Roth* cases and the Washington and Nebraska cases just cited, to the facts of this case we find that the county had exercised reasonable care and diligence under the circumstances in maintaining this road. Even assuming that some of the markers which had been placed thereon had been removed or defaced, there was no evidence that the county commissioners had actual knowledge of their removal, nor was there evidence indicating how long they were not in place so that the commissioners could be charged with constructive knowledge of their absence. Arrington was not a main road nor was it well traveled. Both the driver of the car and the appellee knew the road and of this bridge. The county could not reasonably anticipate that the driver of a car on a foggy, rainy night, with no more than one hundred feet visibility, would travel this road at such a

speed as to be unable to make the turn and cross the bridge successfully. The evidence showed that this road for its entire length was a winding road, which indicated a need for a greater degree of care on the part of a driver in traveling it, particularly in bad weather.

Furthermore, frequently there are ditches or other hazards adjacent to secondary county roads every few feet. To require signs warning of their presence would involve a prohibitory expense, and in many instances their continuous and close proximity would give the impression of a paling fence and not serve the purpose of safeguarding the travelers upon the road.

We conclude that from the evidence disclosed by the record in this case the negligence causing the accident was not that of the appellant, and that the lower court erred in not granting the defendant's motion for a directed verdict in its favor at the conclusion of all of the evidence. Having reached this conclusion we need not consider the other questions presented.

> *Judgment reversed without a new trial, with costs to the appellant.*