CHARLES M. STITZEL ᴇᴛ ᴀʟ. *v.* JOHN LEONARD
KURZ ᴇᴛ ᴀʟ.

\* \* \*

JOHN LEONARD KURZ *v.* BALTIMORE COUNTY,
MARYLAND

[No. 623, September Term, 1972.]

*Decided August 8, 1973.*

526

The cause was argued before MORTON, POWERS and MENCHINE, JJ.

First appeal argued by *Marvin Ellin*, with whom was *Leonard Passano Baker, Jr.*, on the brief for appellants Charles M. Stitzel, Jr. et al.

*James H. Cook* with whom were *Cook, Mudd, Murray & Howard* on the brief for appellee John Leonard Kurz and

by *W. Lee Harrison,* with whom was *Cooper C. Graham* on the brief for appellee Baltimore County, Maryland.

Second appeal argued by *James H. Cook,* with whom were *Daniel O'C. Tracy, Jr.,* and *Cook, Mudd, Murray & Howard* on the brief for appellant John Leonard Kurz.

*W. Lee Harrison,* with whom was *Cooper C. Graham* on the brief for appellee Baltimore County, Maryland.

POWERS, J., delivered the opinion of the Court.

John M. Stitzel, 15, sustained fatal injuries when the automobile in which he was riding as a passenger at about 11:00 P.M. on 11 September 1970 left the road and hit several stationary objects, including a utility pole. The automobile, driven by John Leonard Kurz, was travelling in an easterly direction on Joppa Road in Baltimore County. Three other teen age boys were also passengers.

The parents of the deceased boy filed a suit against Kurz in the Circuit Court for Baltimore County. In one count the parents claimed damages for the wrongful death of their minor son. In another count the father, as administrator, claimed damages for the estate of the deceased.

With a general issue plea to the declaration Kurz filed a third party claim against Baltimore County, which then pleaded to the third party claim. Thereafter, with leave of court, plaintiffs filed an amended declaration, claiming directly against both Baltimore County and Kurz as defendants. Each defendant filed a general issue plea to the amended declaration.

The case was removed to the Circuit Court for Harford County, where it was tried before Judge Harry E. Dyer and a jury on 27 and 28 March 1972. The plaintiffs' evidence, in addition to that going to damages, consisted of the testimony of Kurz, his three surviving passengers, and the Director of Traffic Engineering for Baltimore County. When the plaintiffs closed Kurz moved for a directed verdict. The judge at first reserved ruling on that motion, but after

granting a similar motion by Baltimore County he denied Kurz's motion. The directed verdict for Baltimore County was granted over the opposition of not only the plaintiffs, but of Kurz, who pointed out that the motion was premature, because he had not yet put on testimony in support of his third party claim against Baltimore County.

Plaintiffs then moved for leave to reopen their case to call another witness to supply an element of proof that the court· had said was lacking. This motion was denied.

Kurz rested without offering additional evidence, and made another motion for a directed verdict. The court reserved its ruling on that motion. The case was submitted to the jury as to Kurz, and after the jury failed to agree, the court declared a mistrial.

A timely motion by Kurz for a judgment n.o.v. was later granted. The plaintiffs, dissatisfied with the result as to both defendants, appealed. Kurz, satisfied with the status quo but apprehensive of the possibility of facing a new trial alone, filed a cross appeal against Baltimore County.

Questions raised here by the parties may .be summarized as follows:

1. Was the evidence legally sufficient to require submission to the jury of the issue of negligence by Kurz?

2. Was the evidence legally sufficient to require submission to the jury of the issue of negligence by Baltimore County?

3. Did the trial court abuse its discretion in denying plaintiffs' motion to reopen their case to present additional testimony?

We shall discuss the facts and the applicable law in the light of the substantial merits of the case, Maryland Rule 1071, and we shall then fashion a result which will give due recognition to those substantial merits.

On Friday evening, 11 September 1970, Kurz and the Stitzel boy, a neighbor and close friend, walked together to a nearby store where they waited around to meet some other friends. Kurz later walked back home and borrowed his father's car, a 1963 Studebaker in good mechanical

condition. Several boys went in the car to High's and Gino's, and then to the Perry Hall Shopping Center. Kurz had a can of beer and a few hamburgers. He was not sure what the others had.

The boys decided to go to the home of Vernon Boblitz, who had been with the group earlier but had left. Kurz was driving his father's car. The passengers were John Stitzel, Paul Bower, Jimmy Maretz, and Ronnie Hauer. Kurz himself did not know where Boblitz lived, nor was he familiar with that part of Joppa Road, having been over it only a very few times before. He was driving east on Joppa Road in a normal fashion, at a moderate rate of speed, 30 miles an hour or slightly more. Nobody in the car was intoxicated, there was no carrying on, and Kurz was looking straight ahead, paying attention to the road and not engaging in any conversation.

Kurz said he passed a road sign indicating a curve to the right. He said he slowed down, and proceeded down the road anticipating a curve. He said he became confused and applied his brakes but when he did so he had no stopping power. The car skidded a few feet in something that sounded like gravel, and then went off the road onto a lawn. The car hit a bump in the lawn and threw Kurz off the controls. He said he was lying over the back seat, and did not have his foot on the brake or his hands on the wheel. The car proceeded to go down and strike the pole.

Asked about his confusion, Kurz said that he couldn't pinpoint it then. He saw Kahl Avenue going off to the right just about where the accident happened, and he was thinking it might have been the road, and didn't know which way to go.

The evidence showed that Joppa Road made a fairly sharp turn to the left at that point. Kurz said he and his father went back to the scene on Sunday morning, some 36 hours after the accident, because he wanted to straighten things out a little more. They looked at the road sign. It indicated, by an arrow, a turn to the right. Kurz said he could not consciously recall seeing the sign on the night of the

accident, but said that there would be no reason to remember it, other than seeing it there subconsciously.

The Director of Traffic Engineering for the County testified that on October 5th an investigator sent to the location found that the sign in place was incorrect, showing the curve to be in the direction opposite to the direction of the actual curve. A correct sign was installed on that date. The work orders in the department records included an order on May 1st of 1970 to install a left reverse curve sign at this location. The order was signed by two men from the sign shop crew indicating that they completed the installation. The County had no other records relating to the sign at that location between May and October, 1970, but there were earlier records, indicating that the May installation was a replacement of a damaged sign. The witness said that when the incorrect sign was removed in October, there was no notation on the record that it had been defaced, altered, or moved from another spot. If there had been any evidence of alteration or defacement the sign would have been retained.

There was no significant conflict in the evidence, nor, since all of it was offered by the plaintiffs, would any conflict be expected, unless the testimony of Kurz, an adverse party,[1] were impeached. It was not. It is this evidence then, which we must examine, as did the judge below, in the light of the rule which has been stated so frequently by the Court of Appeals, and by this Court. In *Stein v. Overlook Joint Venture*, 246 Md. 75, 227 A. 2d 226, the Court of Appeals said, at page 81:

"The direction of a verdict in favor of a defendant is not justified if there is any evidence, however slight, legally sufficient to prove negligence. And, in ruling on the motion for a directed verdict, the facts should be considered in the light most favorable to the plaintiff. As the cases point out, the test of legal sufficiency, in a

1. See Code, Art. 35, § 9, *Williams v. Wheeler*, 252 Md. 75, 249 A. 2d 104.

case such as this, is whether the evidence serves to prove a fact or permits an inference of fact that could enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover."

And in *Buchanan v. Galliher and Harless*, 11 Md. App. 83, 272 A. 2d 814, at page 87, we expressed the rule as follows:

"When a trial court is called upon by a motion for a directed verdict to rule upon the legal sufficiency of the evidence to require submission of any issue to a jury, the court must assume the truth of all credible evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made, and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury."

### Sufficiency of the Evidence as to Kurz

But for the explanation by Kurz that he was confused, the "bare bones" of the testimony showed that he was driving a car on the road in a normal, proper way, when, just before the road curved to the left, he ran off the road to the right.

We restated a long recognized rule when we said in *Little v. Duncan*, 14 Md. App. 8, 284 A. 2d 641, at page 16:

"It is axiomatic that the mere happening of an accident does not give rise to a presumption of negligence, *Finney v. Frevel*, 183 Md. 355, 362 (1944); *Bohlen v. Glenn L. Martin Co.*, 193 Md. 454, 463 (1949); *Schaub v. Community Cab, Inc.*, 198 Md. 216, 225 (1951), and that the burden of proof rests upon the plaintiff to demonstrate that a defendant or defendants were guilty of negligence directly contributing to the happening of the accident. *Finney, supra; Larsen v. Romeo*, 254 Md. 220, 225

(1969); *Mazer v. Stedding,* 10 Md. App. 505, 506-507 (1970); *Armstrong v. Johnson Motor Lines,* 12 Md. App. 492, 500 (1971)."

But this rule is not applicable when there has been proof of facts which show or permit a rational inference of negligence, whether sole or concurring with the negligence of another, which was a proximate cause of the injury.

In the one car accident case of *Short v. Wells,* 249 Md. 491, 240 A. 2d 224, the Court of Appeals said, at pages 495 and 496:

"In determining whether a plaintiff has produced sufficient evidence to go to the jury, it is axiomatic that the evidence produced, as well as all legally permissible inferences drawable therefrom, must be considered in the light most favorable to the plaintiff. *Fowler v. Smith,* 240 Md. 240, 213 A. 2d 549 (1965); *Ford v. Bradford,* 213 Md. 534, 132 A. 2d 488 (1957). Where direct evidence is presented, a problem as to its adequacy is rarely ever an issue. The question of sufficiency usually arises when proof of negligence is based on circumstantial evidence. This is so because a decision as to an inference raised by the evidence must be made in addition to deciding the credibility of the witnesses in order to decide the ultimate issue. The value of circumstantial evidence depends on the strength and genuineness of the inferences to be drawn therefrom. The court makes the initial determination on the basis of whether the inference of negligence, *as a generalization,* is more probable than not, and, if it decides that the inference is permissible, it should submit the evidence to the jury to finally determine whether the inference of negligence is more probable than not *in that particular* case. See 2 *Harper and James on Torts* § 19.4. In certain situations it has been held that the mere happening of an accident is evidence of negligence because accidents ordinarily do not

happen in the absence of a breach of duty and this in and of itself constitutes enough circumstantial evidence to permit an inference to be drawn by the jury in a given case. This is the doctrine of *res ipsa loquitur*. Its application in automobile accident cases depends on the circumstances of each accident. If, however, after relying on *res ipsa*, the plaintiff himself goes on and introduces evidence of nonnegligence or of an independent intervening cause *res ipsa* will not be applied and a verdict must be directed against the plaintiff because the inferences become equally probable and the jury would be left to speculate as to which inference to draw. *Strasburger v. Vogel*, 103 Md. 85, 63 Atl. 202 (1906); *Hickory Transfer Co. v. Nezbed*, 202 Md. 253, 96 A. 2d 241 (1953). But if there is a question as to whether the cause is really independent or reasonably foreseeable, the case should still go to the jury. *Moore v. American Stores Co.*, 169 Md. 541, 182 Atl. 436 (1936). Likewise, where *res ipsa* is not relied on, as it was not in this case, and circumstantial evidence of specific acts of negligence is introduced, but the plaintiff goes on and introduces evidence of nonnegligence or of an independent intervening cause, a verdict must be directed against him because the jury is left to speculate as to which inference to draw. *Langville v. Glen Burnie Lines, supra.* But the case at bar is different."

So, also, is the case before us different. We think that the evidence in this case permitted an inference that Kurz did see an erroneous directional sign, though only subconsciously, that he was misled and confused by it, and that the sign was a proximate cause of the events which followed. But saying that such an inference is a rational one, fairly deducible from the evidence, is far from saying that the inference is compelled as a matter of law as the only rational one, and leads to conclusions from which reasonable minds could not differ.

The jury would have been free to reject the inference that Kurz saw or was misled by the sign at all, and to conclude that the accident was caused solely by his negligence. Likewise it would have been free to find that even though Kurz was misled by the incorrect sign he was himself guilty of negligence which was a concurring proximate cause of the accident. Or, the jury could have found that Kurz was free of negligence, and the incorrect sign was the sole proximate cause.

In still another case in which the only car involved left the highway, *Hanes v. State, Use of Lamm*, 236 Md. 28, 202 A. 2d 364, the Court of Appeals commented that the inference of negligence permissibly to be drawn from the facts of the accident was sought to be dispelled by the driver's explanation, and said that reasonable minds could draw different inferences from all the testimony presented.

On the issue of whether there was sufficient evidence to permit the jury to consider whether Kurz was negligent, the very recital of the possibilities emphasizes that their resolution was for the jury.

Kurz makes the further argument that the evidence in this case, as did the evidence in *Langville v. Glen Burnie Lines*, 233 Md. 181, 195 A. 2d 717, falls directly within the pattern of the rule stated by Chief Judge McSherry for the Court of Appeals in *Strasburger v. Vogel*, 103 Md. 85, 63 A. 202, thus:

"But when the plaintiff himself shows that the injury complained of must have resulted *either* from the negligence of the defendant *or* from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury * * * ."

The pattern does not fit, and the rule does not apply. The rule applies to a single defendant before the court when the evidence shows on an "either-or" basis that the injury was caused by the defendant or by the independent or

intervening act of some other party not before the court. In speaking of the doctrine of proximate cause in *Holler v. Lowery*, 175 Md. 149, 200 A. 353, the Court of Appeals said at page 161:

> " In the statement of the doctrine an intervening cause means not a concurrent and contributing cause, but a superseding cause, which is itself the natural and logical cause of the harm."

In *Armiger v. Balto. Transit Co.*, 173 Md. 416, 196 A. 111, a guest passenger was injured when her host driver was blinded by a curtain of snow thrown up by a Transit Company snow sweeper, and collided with another vehicle. The plaintiff sued the Transit Company and the other driver. The trial court granted directed verdicts to both defendants, and the plaintiff appealed. The Court of Appeals reversed, saying, at page 426:

> " Assuming, without deciding, that Hodges was guilty of such negligence as would bar him from recovery, it would still follow that, if his negligence concurred with that of the appellees, or either of them, in causing the injury of which the appellant complains, it was for the jury, upon the facts hereinbefore stated, to say whether the negligence of the appellees, or either of them, or of Hodges, or of the appellees and Hodges, was the proximate cause of said injury."

The Court further said, quoting from 45 C. J. 920:

> " 'As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient if his negligence concurring with one or more efficient causes other than the plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an

"efficient cause, without which the injury would not have resulted to as great an extent and that such other cause is not attributable to the person injured.'"

We hold that the fact that there was evidence tending to show negligence on the part of Baltimore County would not, under the "either-or" rule, require a directed verdict for Kurz. The ruling of the court granting Kurz's motion for judgment n.o.v. was in error.

### Sufficiency of the Evidence as to Baltimore County

At the close of the plaintiffs' evidence Baltimore County moved for a directed verdict, and argued three reasons, 1) Kurz did not see and could not have been misled or confused by the road sign, 2) there was no evidence that the sign was incorrect at the time of the accident, and 3) if the sign was incorrect, there was no evidence of notice, actual or implied, to the County. There was extensive argument on the County's motion, directed primarily to what was referred to as lack of constructive notice to the County that the sign was incorrect.

The court indicated agreement that the evidence would be sufficient to hold the County in, assuming that the sign was erroneous at the time of the accident, except that there was no evidence that the County had knowledge of an erroneous sign, nor was there any evidence of when the erroneous sign became so, and therefore no basis on which to establish constructive knowledge.

It appears that the trial judge relied on the case of *County Commissioners v. Staubitz*, 231 Md. 309, 190 A. 2d 79, which was advanced in the argument on the County's motion as the controlling authority. In that case the Court of Appeals reversed a judgment against Carroll County rendered in favor of a passenger in an automobile which ran off the road when it failed to negotiate a sharp left turn in the road onto a bridge. There was evidence that there had been warning signs and markers at and along the approach to the curve, but that they were missing on the night of the accident. In

holding that the County's motion for a directed verdict should have been granted the Court said in *Staubitz* at page 317:

" Even assuming that some of the markers which had been placed thereon had been removed or defaced, there was no evidence that the county commissioners had actual knowledge of their removal, nor was there evidence indicating how long they were not in place so that the commissioners could be charged with constructive knowledge of their absence."

If the evidence here permitted the conclusion that the sign had been changed after the County erected it, then actual notice to the County of the change, or constructive notice based upon the length of time the sign had been incorrect, would be material to the County's duty to exercise reasonable care in maintaining its roads in a safe condition.

But if Baltimore County itself, through its agents or employees, erected the incorrect sign, it is that direct negligent act, and not a negligent failure to correct a discovered or discoverable defect, which may be the basis of liability. The Court of Appeals so held in *Baltimore City v. Walker*, 98 Md. 637, 57 A. 4, where the Court said, at pages 643 and 644:

" The duty, then, of maintaining in safe condition the sidewalk of a public street, as well as all other parts of the highway, clearly rests upon the municipality. But it is contended upon the part of the appellant, that the appellees prayer was defective because it omitted to submit to the jury the question of whether or not the city had notice of the existence of the water-box or pipe in the street, and *Hitchin's case* in 68 Md. 100, and *Keen's case* in 93 Md. 34, are cited and relied upon to sustain this position. We do not, however, regard those cases as in conflict with the principle of law controlling this.

This is a suit to recover damages for injuries

resulting from an obstruction or nuisance existing in one of the highways of the city of Baltimore, and permitted there by the city itself. The city was the original wrongdoer, and it was its negligent act which caused the injury. In *Guest v. Church Hill,* 90 Md. 695, the rule of law is thus stated. If a person, who has not constructed a work which is a nuisance or causes damage, comes into possession of it he is entitled to knowledge or notice of its injurious character and an opportunity to abate it before he can be held liable, but the wrongdoer is not entitled to any notice before being sued for the injury caused by his own act. *Met. Savings Bk. v. Manion,* 87 Md. 68; *Lion v. Baltimore City Pass. R. R. Co.,* 90 Md. 266."

When it is shown that a condition existed at a certain time, and the condition is one which by its nature is relatively permanent, rather than transitory or changeable, it is rational to infer that the same condition existed before and after the time shown, for a length of time reasonably consistent with the circumstances, unless there is evidence from which a change in the condition could reasonably be inferred.

The jury could properly have found in this case that the sign was erected incorrectly by Baltimore County on 1 May 1970 and remained that way until it was corrected on 5 October 1970. It follows that the evidence was sufficient to permit the jury to find that Baltimore County was negligent and that its negligence was a proximate cause of the injury. It was error to direct a verdict for Baltimore County.

It is appropriate also to comment on the continued vitality of Kurz's third party claim against Baltimore County under Maryland Rule 315, after the plaintiffs amended and claimed directly against Baltimore County.

The identical posture among parties as to pleadings and motions was involved in *Stem v. Nello L. Teer,* 213 Md. 132, 130 A. 2d 769. The Court of Appeals said at page 141:

" The more important question in this case is

whether or not it was erroneous to direct verdicts in favor of the two defendants who were initially brought into the case by being impleaded by the original defendants, before the original defendants had had an opportunity to present any evidence against the impleaded or third party defendants."

The Court concluded, at page 146:

" The lack of any proffer of what the appellants sought to prove leaves us with considerable doubt as to whether they actually suffered any prejudice from the granting of the motions for directed verdicts. However, their being cut off from any opportunity to present whatever evidence they could to fasten liability on the appellees leads us to the conclusion that the judgments for the appellees should be reversed and the case remanded for trial of the issues between the original and the impleaded defendants."

Since the question of the court's denial of the plaintiffs' motion to reopen their case to present additional testimony would not arise in another trial, we need not consider it.

The motion of each defendant below for a directed verdict was made on 28 March 1972. Both the docket entries and the transcript show that Baltimore County's motion was granted, and ruling was reserved on Kurz's motion. Two days later the plaintiffs filed a motion for a new trial as to Baltimore County, and Kurz filed a motion for judgment n.o.v. Both motions were argued on 17 April, and on 6 June the judge filed a memorandum opinion and order. The memorandum said that the Court reaches the conclusion that Kurz's motion for judgment n.o.v. should be granted and that plaintiffs' motion for a new trial will be denied. The ordering paragraph directed the clerk of the court to enter these findings in the file.

We take the judge's order to be a direction to the clerk to enter a final judgment in favor of Baltimore County (Maryland Rule 567, *Merlands Club v. Messall,* 238 Md. 359,

362-363, 208 A. 2d 687), and to enter a final judgment in favor of Kurz (Maryland Rule 563 b 2). However, an examination of the docket shows that the clerk merely recorded the filing of the memorandum and order, but entered no final judgments for or against any of the parties.

Since there were no final judgments from which appeals would lie, both the appeal and cross appeal were premature. *Merlands Club v. Messall, supra.* As the Court of Appeals said in *Blocher v. Harlow,* 268 Md. 571, 303 A. 2d 395, at page 578:

> " It is elementary that parties may not confer appellate jurisdiction by consent upon this Court or the Court of Special Appeals."

As we are authorized to do by Maryland Rule 1071, we remand the case to the lower court for further proceedings necessary for determining the action upon its merits as if no appeal had been taken. The further proceedings shall include the prompt entry of judgments as directed by the trial judge by his order of 6 June 1972. For a period of thirty days after the entry of judgments the trial court shall have revisory power and control over such judgments under Maryland Rule 625 a. Upon a proper and timely motion the trial judge should strike the judgments and order a new trial. We call attention to the provision in Rule 1071 that the order entered by this Court and the opinion on which the order is passed shall be conclusive as to the points finally decided thereby.

> *Case remanded for the purpose of further proceedings in accordance with this opinion. Costs in the lower court to abide the result.*
>
> *Costs in this Court to be paid by appellants, except for the cost of briefs in the cross appeal, which shall be paid by the cross appellant.*