BALTIMORE COUNTY, MARYLAND ET AL. *v.*
CHARLES M. STITZEL ET AL.

[No. 831, September Term, 1974.]

*Decided May 7, 1975.*

The cause was argued before THOMPSON and POWERS, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals, specially assigned.

*W. Lee Harrison,* with whom was *Cooper C. Graham* on the brief, for appellant, Baltimore County, Maryland.

No brief was filed on behalf of John Leonard Kurz as appellant.

*Henry E. Dugan, Jr.,* with whom were *Marvin Ellin* and *Jonathan Schochor* on the brief, for appellees, Stitzel.

*Daniel O'C. Tracy, Jr.,* with whom was *James H. Cook* on the brief, for appellee, John Leonard Kurz.

SMITH, J., delivered the opinion of the Court.

We shall here reverse so much of a judgment as was incorrectly entered on a third-party claim and otherwise affirm judgments entered after a new trial as the result of the decision of this court in *Stitzel v. Kurz*, 18 Md. App. 525, 308 A. 2d 430 (1973).

This litigation arises from an accident on September 11, 1970, in which John M. Stitzel, a passenger in an automobile operated by John Leonard Kurz (Kurz), was killed when the vehicle went off of Joppa Road about 100 feet east of Kahl Avenue in Baltimore County. Suits against Kurz were filed by the surviving parents of young Stitzel and his estate (the Stitzels). Kurz impleaded Baltimore County (the County) as a third-party defendant, pursuant to the provisions of Maryland Rule 315. He alleged that the injuries and the resulting death of young Stitzel "resulted from the negligence of Baltimore County ... in its erection and maintenance [at the location of the accident] of a directional road sign, incorrectly designating to motorists approaching ... at said point the direction in which said Joppa Road curves, [immediately beyond] the location of the sign ...." He prayed that judgment "for any sums that [might] be adjudged to be due to the Plaintiffs" be entered against the County "or in the alternative against Baltimore County, Maryland and ... Kurz if the jury should find both of them liable ...." The Stitzels filed an amended declaration in which the County was brought in as a party defendant. No cross-claim under Rule 314 was filed by Kurz against the County.

The jury returned verdicts against Kurz and the County. Damages were assessed in the amount of $25,000 in favor of the parents and $12,000 in favor of the estate. After the trial court rejected motions made on behalf of the County for judgment *n.o.v.* or a new trial, judgments absolute in the amount of the jury verdict were entered in both instances against Kurz and the County. Within the 30 day period specified in Rule 1012, an appeal was entered by the County. Kurz moved in the trial court under Rule 1013 to dismiss the appeal. He contended that "all of the claims for

relief that were presented at the trial of the . . . action ha[d] not been adjudicated," that there had been no express determination by the trial court directing the entry of a final judgment on less than all of the claims presented, and that under the provisions of Rule 605 a the appeal was premature, not being from a final judgment. Kurz also filed a motion in which he prayed that the court refer to the pleadings and issues and then "mold the verdicts into proper shape by entering judgment in favor of the Third-Party Plaintiff, John Leonard Kurz, against Baltimore County, Maryland for one-half the judgment rendered by the jury" in each case. The following day the Stitzels filed a similar motion asking for entry of a judgment *nunc pro tunc* on the third-party claim. The County filed an answer intended to cover both motions. It claimed that the judgment "was final and adjudicated fully the question of joint liability as to both of said claims set forth in the Amended Declaration against both Defendants and in the Third Party Complaint filed by the Defendant, Kurz, against the Third Party Defendant, Baltimore County." It said "that the verdicts in this case did conclude all of the issues by the Parties to said litigation and there [was] no necessity to mold or alter the verdicts or the docket entries," since the jury "passed upon the sole issue between the Parties under both the Amended Declaration against both Defendants and the Third Party Complaint by one Defendant against the other Defendant which was the issue of joint or several liability." It contended that any judgment entered on the third-party complaint "could not be in monetary form or by a stated amount as such would serve only to make the Defendant, Baltimore County . . . liable for all or part of the verdict returned against both Defendants, and, in addition thereto, render it liable to the Third Party Complainant for $18,500." It said that "the entry of any Order Nunc Pro Tunc [w]ould only serve to extend the appeal time after same ha[d] already expired" and that this was "beyond the powers of [the trial court] under a ruling of the Maryland Court of Appeals in *Lang v. Catterton*, 267 Md. 268, 285 [, 297 A. 2d 735 (1972)]."

The trial judge held a hearing on these motions. He

granted the motion of Kurz to dismiss the appeal, ordered the original judgments stricken, and directed entry of judgments as originally entered and also in favor of the third-party plaintiff against the County for one-half of each of the judgments. A second timely appeal was then filed by the County. Kurz also appealed, although he has filed no brief in this court as appellant nor has he presented any contentions alleging error on the part of the trial court.

The County claims (1) that its "motion for directed verdict ... should have been granted," (2) that "the jury [should not] have been allowed to speculate as to the cause of the accident where there was no proof that the Appellant had been guilty of negligence," and (3) that the trial court erred in striking the original judgments, dismissing the appeal filed on those judgments, and then entering new judgments.

i

## Motion for Directed Verdict

It is conceded that the County replaced an erroneously erected curve sign at the location of the accident on October 5, 1970, a little more than three weeks after the accident. An individual living in close proximity to the sign testified that on the day of the accident the sign showed a curve to the right. It should have indicated a curve to the left. She said that prior to the date of the accident the sign had existed in this erroneous manner during the whole time that she had lived there, which was for a period of about eight years. The County says that "her testimony was shown to be erroneous by the fact that the records of Baltimore County showed that the sign was changed in 1964 and 1968, and it was changed twice in 1970, so there had been at least four changes in the sign from 1962 to 1973 . . . ." It points to the safety precautions testified to by one of its employees and says that "installing an incorrect sign once would be difficult, since it is necessary to check out the correct sign from the shop before the County engineers even reached the site. But to accomplish this feat four times bends the law of averages completely out of shape." It then concludes that the

neighbor "was completely impeached by her own testimony and that of the County records, and the question of constructive notice [was] completely unproven."

The court and jury had more before them than the testimony of this neighbor, however. The accident occurred late on Friday evening, September 11. Another neighbor testified that on the following Sunday he observed that the sign was in error. When pushed somewhat as to the fact that he had never made a complaint to responsible authorities relative to an incorrect sign, the record on cross-examination reflects:

"A. Could I say something?

"Q. Sure. Say whatever you want. I don't care.

"A. Would it do any good if I went and complained about all the missing signs along there?

"Q. Are there a lot of missing signs?

"A. A lot of missing signs and laying down signs and everything else.

"Q. And so you do have a problem with signs along that particular stretch of road, isn't that correct?

"A. You could say they don't maintain them.

"Q. You think they don't maintain them. All right. I have no further questions."

The Director of Traffic Engineering for the County testified that his office was advised on October 2 that there was an incorrect sign at the location and that the sign was corrected on October 5. He said their records gave no indication that the County's personnel had observed anything showing vandalism or other tampering with the sign. He conceded that there had been instances in which County crews had installed incorrect signs. One of the individuals who replaced the sign, although contending that there had been instances in which signs had been turned around but "the pole bolts [were] just as tight as the day [they] put them on," conceded that he found no evidence of tampering in this instance. Also presented in evidence was the testimony of a police officer

who had reviewed the log books of the district of the Baltimore County Police Department in which the accident scene was located. For the one year prior to the accident he said that one regular patrol car was assigned to the area and there were "two or three other cars [which went] through that area going to other sections of the district." He stated that "[t]he post car [went] up and down there all day long and the other cars m[ight] pass through once or twice a shift which would be three times a day, three shifts a day."

The test for determining the propriety of a directed verdict under circumstances such as this was well-summarized by Judge Levine for the Court of Appeals in *Wood v. Abell*, 268 Md. 214, 300 A. 2d 665 (1973):

> "The contention by Wood that the trial court erred in not directing a verdict is grounded essentially on the argument that there was insufficient evidence to take the issue of negligence to the jury, and that the submission of that question compelled the jury to speculate. We do not see it that way.
>
> "The reasoning on this point is that even assuming it was negligent for Wood to alight from the tractor while it was in gear (reverse), there was no evidence that this occurred here, for which he cites his testimony, 'I don't think it was in any gear,' and 'To the best of my belief, I do not believe it was in gear, when I dismounted.' In making this argument, Wood, although professing recognition, seems to have lost sight of the now-axiomatic principle that in determining whether a plaintiff has produced sufficient evidence to go the jury, the evidence produced, as well as all legally permissible inferences drawable therefrom, must be considered in the light most favorable to the plaintiff, *Green v. Otenasek*, 267 Md. 9, 15, 296 A. 2d 597 (1972); *Baulsir v. Sugar*, 266 Md. 390, 394-95, 293 A. 2d 253 (1972); *Durante v. Braun*, 263 Md. 685, 689, 284 A. 2d 241 (1971)." *Id.* at 230-31.

What Judge Powers said for this court in *Stitzel v. Kurz*, 18 Md. App. 525, *supra*, is equally applicable here:

"When it is shown that a condition existed at a certain time, and the condition is one which by its nature is relatively permanent, rather than transitory or changeable, it is rational to infer that the same condition existed before and after the time shown, for a length of time reasonably consistent with the circumstances, unless there is evidence from which a change in the condition could reasonably be inferred.

"The jury could properly have found in this case that the sign was erected incorrectly by Baltimore County on 1 May 1970 and remained that way until it was corrected on 5 October 1970. It follows that the evidence was sufficient to permit the jury to find that Baltimore County was negligent and that its negligence was a proximate cause of the injury. It was error to direct a verdict for Baltimore County." *Id.* at 538.

Bearing in mind that the allegation was not only that the County erroneously erected the sign, but that it had maintained the sign incorrectly, in other words had let it remain in an incorrect manner after it knew or should have known that the sign was wrong, we conclude that when the evidence here is viewed, as it must be viewed, in the light most favorable to the plaintiff, the trial judge did not err when he failed to grant a directed verdict.

ii

The Jury Instruction

The trial court instructed the jury:

"You are instructed that should you find from the evidence in this case that the road sign erected on Joppa Road near Kahl Avenue, to which reference was made throughout this trial, was either erroneously erected by Baltimore County, or after

erected was altered by some third person, unknown and permitted to remain uncorrected for a period of time sufficient to put the County on notice that said sign was erroneous prior to the accident complained of, and that the defendant county either did not correct the erroneous sign, and should you further find through employees of Baltimore County who passed the sign, that such condition was known to such employees or by the exercise of due care should have known [sic] by the said employees and conveyed to Baltimore County, and should you further find that this erroneous sign caused or contributed to cause the accident complained of, and the subsequent injuries and death of the infant plaintiff, then I instruct you that your verdict should be against Baltimore County and in favor of the plaintiffs."

The County objects to this instruction on the ground that in the absence of evidence of the date that the sign became defective that "the jury should not have been allowed to speculate as to how long the sign was defective and whether notice was imputed thereby to the County." In essence, it requests a directed verdict on the issue of constructive notice. It says that in not having granted its earlier motion for a directed verdict the trial court gave "the jury a roving commission to arbitrarily choose a date when the sign was incorrectly installed," that "rank speculation" was thus permitted. We do not see it that way. There was evidence supporting the Stitzels' theory of the case. Unless that testimony was such that there should have been a ruling as a matter of law that it should be given no credence, the Stitzels were entitled to an instruction relative to their theory of the case. The County's contention is that the testimony of the neighbor who said that the sign not only was in error on the day of the accident, but had been so during the entire time she lived there, was incredible testimony. It bases this contention upon the fact that the testimony is in conflict with the records of the County. This contention essentially assumes that the records correctly

reflect what the County employees did and what they observed, which does not necessarily follow. What Judge McWilliams said for the Court in *Racine v. Wheeler*, 245 Md. 139, 225 A. 2d 444 (1967), is worthy of consideration here:

> "Since the jury is free to believe only a portion of the evidence of each side the synthesis apparently accomplished by the jury is simply a manifestation of its obvious function." *Id.* at 144.

Here, the conflict between the testimony of this neighbor and the County records was for the jury. It was not such a conflict as to warrant a ruling as a matter of law that no part of the neighbor's testimony could be given credence. Accordingly, the trial court did not err in its instruction to the jury relative to the Stitzels' theory of the case.

### iii

### The Judgment

The County contends that the judgments originally entered on behalf of the Stitzels against Kurz and the County on July 15, 1974, should not have been stricken, since "all outstanding claims for relief had been adjudicated by the court on said date," while the contention of Kurz is that the matter of this third-party claim was still open.

The effect of the jury's verdict here was a determination that the County and Kurz were joint tort-feasors. The County was impleaded by Kurz under Rule 315 a. Rule 315 e 2 provides for judgments "upon such terms as are appropriate to protect the rights of the interested parties . . . ." The Uniform Contribution Among Tort-Feasors Act is embodied in Maryland Code (1957) Art. 50, §§ 16-22. Through this act a statutory right of contribution among joint tort-feasors was created which did not exist at common law. *Baltimore Transit Co. v. State*, 183 Md. 674, 679, 39 A. 2d 858 (1944). It establishes a procedure whereby that right may be made effective in practice. *Baltimore Transit Co. v. State, supra.* By § 17 (b) of that act "[a] joint tort-feasor is not entitled to a money judgment for

contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof." In *Cotham and Maldonado v. Board*, 260 Md. 556, 566, 273 A. 2d 115 (1971), the Court of Appeals quoted with approval from *Southern Maryland Oil Company v. Texas Company*, 203 F. Supp. 449 (D. Md. 1962), where Judge Northrop said:

> "[A]ll [Maryland courts] who have had occasion to consider the matter have agreed that the rights both to indemnification and to contribution, whether based on contract or tort, accrue at the time of payment and not before." *Id.* at 452-53.

The Court went on to state in *Cotham* that the claim of an alleged joint tort-feasor for indemnification was "an inchoate claim which d[id] not ripen into being unless and until he p[aid]" the original plaintiff.

We have found no Maryland case which has considered the form of judgment to be entered in a case such as this. We find persuasive *Smith v. Whitmore*, 270 F. 2d 741 (3rd Cir. 1959), a case involving application of Rule 14 of the Federal Rules of Civil Procedure, the counterpart to our Rule 315, and the Uniform Contribution Among Joint Tort-Feasors Act as then in effect in Pennsylvania. Plaintiff Smith there had instituted an action against Whitmore for recovery of damages for personal injuries arising out of an automobile accident which occurred in Pennsylvania. Whitmore impleaded Pue as a third-party defendant, seeking contribution in the event that he and Pue were found negligent. Unlike the case here, the plaintiff did not amend his complaint to include Pue as a party defendant. The jury returned a general verdict for Smith against Whitmore in the sum of $19,500. In response to an interrogatory it found that Pue was "guilty of negligence which was a substantial factor in causing the accident." The trial court entered judgment in favor of Smith against Whitmore in the amount of $19,500 and in favor of Whitmore against Pue, the third-party defendant, in the amount of $9,750, similar to what was done here. The third-party defendant moved for

an order amending the judgment so that it was in favor of the plaintiff against the defendant in the amount of $19,500 "and in favor of third-party plaintiff and against third-party defendant for contribution." An order was entered amending the judgment so that it was "in favor of third-party plaintiff and against third-party defendant in the sum of $9,750.00, for contribution." The court quoted subsections 1 and 2 of § 2 of the uniform act then in force in Pennsylvania, identical to §§ 17 (a) and 17 (b) of the Maryland act. It then said, after reviewing other cases:

> "It seems desirable in our opinion to conform the judgment in a contribution case to the specification in the Uniform Act that 'A joint tort-feasor is not entitled to a money judgment for contribution until he has * * * discharged the common liability or has paid more than his pro rata share thereof. * * *'
>
> "The quiver of the judgment should contain but two arrows — one directed to the liability of the defendant and one to the existence of the right of contribution. The defendant who, after the entry of such a judgment, 'discharged the common liability or * * * paid more than his pro rata share thereof * * *' could then obtain a money judgment against the third-party defendant for the excess which he has paid over his pro rata share of the plaintiff's judgment.
>
> "Such a judgment would, in the instant case, read as follows:
>
>> 'And now, to wit, (date), in accordance with the verdict and the jury's answer to an interrogatory, it is
>>
>> 'Ordered that Judgment be and the same is hereby entered in favor of Plaintiff, George Smith, and against the defendant, Max C. Whitmore, in the sum of Nineteen Thousand Five Hundred Dollars ($19,500), together with costs, and it is further

> 'Ordered and Adjudged that the defendant, Max C. Whitmore, and the third-party defendant, Pervis Lee Pue, Jr., are joint tortfeasors and that the right of contribution exists in favor of the said Max C. Whitmore and against the said Pervis Lee Pue, Jr., and the said Max C. Whitmore may hereafter have judgment against the said Pervis Lee Pue, Jr. for the amount which he proves he has paid to the Plaintiff, George Smith in excess of the sum of Nine Thousand Seven Hundred and Fifty Dollars ($9,750.00).' "

*Id.* at 746.

In 3 J. Moore, *Federal Practice* ¶ 14.11 at 14-323 (2d ed. 1974), in discussing judgments under Rule 14 (a) of the Federal Rules of Civil Procedure, the author states that "the impleader judgment may be so fashioned as to protect the rights of the other tort-feasors, so that defendant's judgment over against them may not be enforced until the defendant has paid plaintiff's judgment or more than his proportionate share, whichever the law may require."

It was improper for the trial judge to enter a judgment in favor of Kurz against the County for one-half of the judgments entered against the two defendants since, as we have already noted, the statute provides that the joint tort-feasor is not entitled to a money judgment for contribution until he has paid the common liability or paid more than his pro rata share of that liability. If Kurz paid more than his pro rata share, he would be entitled to contribution from the County. By the same token, if the County paid more than its pro rata share it would be entitled to contribution from Kurz, notwithstanding the fact that it has filed no cross-claim in this proceeding. It would follow as a matter of law upon the jury's determination in this case that Kurz and the County were jointly and severally liable. If one defendant pays more than his pro rata share, he then becomes entitled to judgment for such sum. He can protect himself by insisting that the judgment be assigned to his use

so that he then has a judgment against the remaining defendant. Nothing more needed to be done at the time the judgments absolute were originally entered in favor of the Stitzels against both defendants. The trial judge thus erred in dismissing the original appeal as premature. The appeal now before us raises the issue since it includes an appeal from his order dismissing the appeal. Upon the remand the trial judge will direct entry of judgment as originally entered.

*Appeal of John Leonard Kurz dismissed.*

*Judgments reversed in part and affirmed in part; case remanded to the Circuit Court for Harford County for entry of judgments in accordance with this opinion; Baltimore County to pay the costs.*